779 F.2d 643
 The STEWART ORGANIZATION, INC., a corporation; Walter H.
Stewart, and James S. Snow, Jr., Plaintiffs-Appellees,
v.
RICOH CORPORATION, a corporation, Ricoh of America, Inc., a
corporation, Defendants-Appellants.
 No. 85-7231.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 10, 1986.
Rehearing En Banc Granted March 14, 1986.*
 
 Ralph H. Yeilding, Bradley, Arant, Rose & White, Scott M. Phelps, Birmingham, Ala., for defendants-appellants.
 Joseph W. Letzer, Thomas, Taliaferro, Forman, Burr & Murray, Janet L. Humphreys, Birmingham, Ala., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before GODBOLD, Chief Judge, JOHNSON, Circuit Judge, and TUTTLE, Senior Circuit Judge.
 JOHNSON, Circuit Judge:
 
 
 1
 This case represents another episode in a dialectic that has engaged the federal courts for fourteen decades--the precise scope of the laws governing federal court decisions in diversity actions. Specifically, this case requires us to decide whether a freely negotiated contractual choice of forum clause is enforceable in diversity actions in federal court when the forum state considers such clauses to be violative of public policy. For the reasons explained herein, we find that such clauses present procedural questions to be resolved by federal law independent of forum state policy. Accordingly, we REVERSE the judgment below and REMAND WITH INSTRUCTIONS to transfer this case to an appropriate forum.
 
 
 2
 I. BACKGROUND.
 
 
 3
 Appellant Ricoh Corporation is a nation-wide manufacturer of copy machines with headquarters in New Jersey and with significant corporate operations conducted in Manhattan.[1] The appellee, The Stewart Organization, is a closely held corporation in Birmingham, Alabama, that engages in a variety of entrepreneurial endeavors. The chief figures in appellee's operations are controlling shareholders Walter H. Stewart and James S. Snow, Jr. Stewart is evidently a man afflicted with the Midas touch. He is a certified public accountant of fifteen years standing, is senior partner in a major Birmingham firm, and has been in and out of several ventures, each turning multi-million dollar profits. He purchased a failing local copying business and took it from $750,000 indebtedness to sales of $1.8 million in one year.
 
 
 4
 Due to dissatisfaction with the Savin machines the Organization sold, Stewart entered into negotiations with appellant to become a dealer for Ricoh in central Alabama. After lengthy negotiations, Mr. Bob Banks of Ricoh presented Mr. Stewart with a printed "Dealer Sales Agreement" contract. While certain blank spaces in the contract were filled in by Banks with Stewart's acquiescence, Stewart did not bother to read Paragraph 18.1 of the contract (nor, apparently, any of the other printed language) which contained a choice of law clause and a choice of forum clause in favor of New York law and a Manhattan forum respectively.[2] Banks stated that the contract was standard and no changes of substance would be permitted, and he pushed Stewart to sign it so that Banks could catch his plane back to Atlanta. Stewart never did read the clause until his counsel pointed it out to him prior to this suit.
 
 
 5
 On September 28, 1984, appellee filed this action in the United States District Court for the Northern District of Alabama alleging breach of contract, breach of warranty, fraud, and federal antitrust violations arising out of the dealer-manufacturer relationship between Ricoh and the Stewart Organization. The action was based on diversity and federal question.
 
 
 6
 In response to this complaint, the appellant filed motions to dismiss and to transfer on grounds of improper venue and inconvenient forum, pointing to the choice of law and forum selection clauses of Paragraph 18.1 of the contract. Following briefing and oral argument, the trial court denied the appellant's motions on January 29, 1985. The court refused to enforce the clauses because it was of the opinion that state law governed the enforceability of a forum selection clause (which Alabama law deems contrary to public policy) and because the forum clause did not embrace all of the appellee's claims, meaning transfer would split the case. This interlocutory appeal comes by certification of the district court under 28 U.S.C.A. Sec. 1292(b).[3] We granted the petition for permission to appeal.
 
 
 7
 II. ANALYSIS.
 
 
 8
 This appeal raises three issues: A) whether federal or state law governs the enforceability of a forum selection clause; B) whether this particular forum selection clause is unenforceable as unreasonable or overreaching; and C) whether this particular clause has sufficient scope to transfer all claims to a New York court.[4] These issues are purely legal and accordingly are subject to plenary review by this Court. Cathbake Inv. Co. v. Fisk Elect. Co., 700 F.2d 654, 656 (11th Cir.1983).
 
 
 9
 A. Federal or State law?
 
 
 10
 Since Swift v. Tyson, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842), federal courts have been ensnared by an intellectual tar baby. They have wrestled, never wholly successfully, with the sticky question of which law, state or federal, will govern various aspects of the decisions of federal courts sitting in diversity.[5] Erie R. Co. v. Tompkins, 304 U.S. 64, 73, 58 S.Ct. 817, 819, 82 L.Ed. 1188 (1938), Justice Brandeis writing for the Court, overruled Swift and held that federal courts in diversity actions "would apply as their rules of decision the law of the State, unwritten as well as written." The decision sought to reflect properly the distribution of judicial power between two sovereigns; it was a recognition that one concomitant of our federalism is the need for special care at the intersection of state and federal sovereignty.
 
 
 11
 Though Erie spoke in language plain and firm, directing that henceforth in diversity a federal court would act merely as another court of that state, Justice Reed's concurrence suggested that the scope of Erie was delimited. While decisions in diversity were to be governed by substantive state law, yet "no one doubts federal power over procedure." Id. at 92, 58 S.Ct. at 828. The Supreme Court and inferior courts have grappled with this dichotomy ever since.
 
 
 12
 The distinction between substance and procedure, sad to say, proved little more than gossamer, for "[e]ach [term] implies different variables depending upon the particular problem for which it is used." Guaranty Trust Co. v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945). Since this mechanical distinction proved unwieldy and unpredictable, Justice Frankfurter crafted a new approach in his opinion for the Court in Guaranty Trust. The premise of Erie, he reasoned, was that parties litigant should not be able to undermine policy choices of the forum state merely by crossing the street from the state to the federal courthouse. Federal courts sitting in diversity should resolve questions so that "the outcome of the litigation in federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." Id. Thus, the "outcome determinative" test was launched.
 
 
 13
 Nine years' experience with this rule showed it to be harsh and unworkable. It gave too little deference to the validity of federal interests and constricted the function of the federal court system as an independent source of relief. In response, the Court held in Byrd v. Blue Ridge Rural Electric Coop., Inc., 356 U.S. 525, 537-39, 78 S.Ct. 893, 900-01, 2 L.Ed.2d 953 (1958), that determining which rules were to govern required balancing the federal interest in uniform process against the state interest in uniform results. The former Fifth Circuit found the former more important, Monarch Ins. Co. of Ohio v. Spach, 281 F.2d 401, 408 (5th Cir.1960), but other courts came to a contrary conclusion. Allstate Ins. Co. v. Charneski, 286 F.2d 238, 244 (7th Cir.1960).
 
 
 14
 Still unsatisfied, the Supreme Court turned to this vexing question yet again in Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). To the extent that Congress has enacted federal procedural rules (and implicitly federal statutes governing federal court procedure), the question is governed by federal law. "[T]he constitutional provision for a federal court system ... carries with it congressional power to make rules governing the practice and pleading in those courts, which in turn includes a power to regulate matters which, though falling within the uncertain area between substance and procedure, are rationally capable of classification as either." Id. at 472, 85 S.Ct. at 1144.[6] State policy to the contrary, even if arguably substantive, is simply overridden.
 
 
 15
 With Hanna as our guide, we may descend from these rarefied heights to the facts of this case. The issue here is the enforceability of choice of forum and choice of law clauses freely adopted in arm's-length contractual negotiations. New York permits both; Alabama permits only contractual choice of law clauses. Redwing Carriers, Inc. v. Foster, 382 So.2d 554, 556 (Ala.1980); Goodwin v. George Fischer Foundry Systems, Inc., 769 F.2d 708, 712 (11th Cir.1985). Since it is clear by the terms of the contract that New York law will govern the underlying dispute, there is no question that, to the extent Guaranty Trust retains viability, the resolution of the choice of forum question will not affect the substantive outcome of the case. Both New York and Alabama would apply New York law.
 
 
 16
 We thus must simply decide whether these two parties may choose the courts of Manhattan as the appropriate venue.[7] The appellant suggests that the question is governed by the opinion of the former Fifth Circuit in In re Fireman's Fund Ins. Co., Inc., 588 F.2d 93 (5th Cir.1979), and by The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Both of these cases are instructive in that they stand firmly behind the enforceability of choice of forum clauses unless unreasonable under the circumstances. But while these cases inform us as to general policy, they are of only limited help on the question whether state or federal law governs enforceability in diversity actions because both arose under statutes creating exclusive federal jurisdiction. Fireman's Fund was decided under the Miller Act and The Bremen was an admiralty case.
 
 
 17
 We hold that venue in a diversity action is manifestly within the province of federal law; under Hanna we do not properly look to Alabama law for its resolution. This conclusion is dictated by statute and binding precedent. That venue is a question of federal procedure is manifest in two ways. First, Congress has specifically provided, by statutory enactment, rules of venue to govern federal district courts in diversity actions. 28 U.S.C.A. Secs. 1391, et seq. (1985). By making specific provision, rather than leaving rules of venue to be governed by state common law, the statute makes clear that Congress considered this a question appropriately governed by federal legal standards. Second, Congress has permitted the adoption of Fed.R.Civ.P. 12(b)(3) and 41(b), further evidence that federal court venue is governed by federal law. Together these enactments make clear that, under the Supreme Court's reasoning in Hanna, Alabama policy is not controlling. 380 U.S. 472, 85 S.Ct. 1144.[8]
 
 
 18
 Further, though neither the parties nor the court below seem to have noticed it, this question has already been decided by the Supreme Court. In National Equipment Rental v. Szukhent, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964), the Court considered a case arising in diversity where Michigan residents leased farm equipment from a New York-based company. The contract contained in fine print choice of forum and choice of law clauses, both in favor of New York. The Szukhents did not read this provision. The Court held the clause enforceable because "it is settled, as the courts below recognized, that parties to a contract may agree in advance to submit to the jurisdiction of a given court...." Id. at 315-16, 84 S.Ct. at 414. While the main issue in the case was the propriety of another clause designating a New York agent for service of process, the Court upheld the clause in all respects without reference to either New York or Michigan law.[9] The facts of Szukhent are obviously analogous to those before us today, and we see no principled basis for avoiding the import of its holding.
 
 
 19
 Beyond Szukhent, we this year decided Citro Florida, Inc. v. Citrovale, S.A., 760 F.2d 1231 (11th Cir.1985) (per curiam ). We there considered in diversity a contractual forum selection clause that referred the case to Brazil. We held that, because the language of the clause was ambiguous as to whether it vested venue solely or concurrently in Brazil, an American court could entertain the suit. But our analysis as to the enforceability of the clause turned on the principles of reasonableness articulated in The Bremen. Id. at 1232. State law was not considered. Accord, Coastal Steel v. Tilghman Wheelabrator, 709 F.2d 190, 201 (3d Cir.) ("The Supreme Court in The Bremen and in Scherk [v. Alberto-Culver Co. 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) ] appears to have assumed without saying so that in a federal forum the enforceability of a forum selection clause is determined by a generally applicable federal law"), cert. denied, 464 U.S. 938, 104 S.Ct. 349-50, 78 L.Ed.2d 315 (1983); Bense v. Interstate Battery System of America, 683 F.2d 718, 721-22 (2d Cir.1982) (expressly declining to use Texas venue law, which disfavored forum selection clauses, to undo contractual agreement); Pelleport Investors v. Budco Quality Theatres, 741 F.2d 273, 279-80 (9th Cir.1984); Snyder v. Smith, 736 F.2d 409, 419-20 (7th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). But cf., Mercury Coal & Coke v. Mannesmann Pipe & Steel, 696 F.2d 315, 317 (4th Cir.1982) (dictum noting that West Virginia law favors forum selection clauses).
 
 
 20
 The appellee offers a number of cases that it claims stand for the proposition that the enforceability of a contractual choice of forum clause is substantive and hence in diversity governed by the law of the forum state. This argument is based on the wooden substance/process test that Hanna discarded. Whether a state policy will override a federal interest is a different question, not so facilely resolved, governed by the factors we noted at footnote 6. To the extent state law factors into the analysis of those cases, it goes to issues independent of the enforceability of the choice of forum clause. Even if the cited cases are correct, none is binding for all come from the district courts of other circuits, and we would read them as inconsistent with binding precedent.
 
 
 21
 In sum, we hold that the general enforceability of contractual choice of forum clauses in federal diversity cases is resolved by reference to federal law. We turn next to the question whether this particular clause is enforceable under operative principles of federal law.
 
 
 22
 B. Enforceability of this clause.
 
 
 23
 The seminal case on enforceability of contractual choice of forum clauses is the Chief Justice's opinion in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). The Court in exceptionally strong language banished the former bias against such clauses and directed that in almost all circumstances enforcement of such provisions is favored. "The correct approach [is to] enforce the forum clause specifically unless [the adverse party] could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." Id. at 15, 92 S.Ct. at 1916. The Court held the clause enforceable even though the adverse party claimed not to have read it before signing the agreement. Id. at 14 n. 16, 92 S.Ct. at 1915 n. 16.
 
 
 24
 As to "unreasonable or unjust," the Court identified two factors that might justify refusing to enforce a clause. First, we should decline enforcement if it "would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." Id. at 15, 92 S.Ct. at 1916. At first glance this appears to support appellee's contention that we should not enforce the clause as contrary to Alabama law. But the concern is with policies of the forum (i.e. federal court) rather than of the state. We see no other reasonable way to reconcile this language with the case law and with Congressional enactments. If venue were to be governed by the law of the state in which the forum court sat, the federal venue statute would be nugatory. Nor would there be any legitimacy to the Federal Rules that govern certain aspects of venue, for they would tread on state prerogatives. Hanna clearly rejected this notion. So long as enforcement is consistent with substantive federal law, and with the decisions of this Circuit, the clause is not in conflict with the public policy of the forum. That is the case here.
 
 
 25
 Second, a court may decline to enforce the clause as unreasonable "if the chosen forum is seriously inconvenient for the trial of the action." 407 U.S. at 16, 92 S.Ct. at 1916. (emphasis in original). The party seeking to escape the application on convenience grounds must "show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." Id. at 18, 92 S.Ct. at 1917.
 
 
 26
 This is an exceptionally heavy burden and the appellee does not meet it. There is no evidence of inconvenience of the sort contemplated in The Bremen. As to the need to bring papers and witnesses to New York, regardless of whether the case is tried in Alabama or New York one party will be inconvenienced. "[T]he question is which party it should be." Brilmayer, How Contacts Count: Due Process Limitations on State Court Jurisdiction, 1980 Sup.Ct.Rev. 77, 92. Of necessity "[e]very contract is the acceptance of some inequality--and under our decisions ... it cannot be denied that the plaintiff ... did contract." Power Manufacturing Co., v. Saunders, 274 U.S. 490, 498, 47 S.Ct. 678, 681, 71 L.Ed. 1165 (1927) (Holmes & Brandeis, JJ., dissenting). We must give both parties the benefit of their bargain, which was to put the burden of litigation in a foreign forum on the appellee.
 
 
 27
 Nor is there any meaningful showing that appellee would be denied its day in court. The only evidence in the record is the statement of Mr. Stewart that he could not afford to pursue his claim in New York. This does not obtain. Mr. Stewart is a wealthy man. Further, his expenses would presumably be absorbed by the real party in interest, The Stewart Organization as a corporate entity. There is no record evidence to suggest that the corporation is unable to afford the costs of litigation in the Empire State.
 
 
 28
 As to its claim of fraud and overreaching, the appellee spends considerable words to the effect that Mr. Stewart, as its representative, is a poor, ignorant person bulldozed into signing this contract by a pushy salesman. The facts belie this. Mr. Stewart is savvy; his Organization is large and successful. It was turning $1.8 million in annual sales of Savin products when it switched to Ricoh. Mr. Stewart is not the Michigan dirt farmer in Szukhent. If he was dissatisfied with the terms of the contract or felt the Ricoh representative was pushing too hard, he could have simply walked away from the bargaining table.
 
 
 29
 Nor may we release him because he did not read the boilerplate. "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written." Upton v. Tribilcock, 91 U.S. (1 Otto) 45, 50, 23 L.Ed. 203 (1875). Failure to read fine print will not save one from the results of his carelessness. Quality Foods, Inc. v. U.S. Fire Insurance Co., 715 F.2d 539, 542 (11th Cir.1983); Century Plaza v. Hibbett Sporting Goods, Inc., 382 So.2d 7, 8-9 (Ala.1980). This case is, in short, an "arm's-length negotiation by experienced and sophisticated businessmen and [because there is absence of] some compelling and countervailing reason it should be ... enforced by the court[ ]." The Bremen, 407 U.S. at 12, 92 S.Ct. at 1914.[10]
 
 
 30
 C. The Scope of the Forum Selection Clause.
 
 
 31
 The court below was concerned that the forum clause would "not control the forum for trying those counts or causes of action which are not contractual in nature, so that a transfer of the causes insofar as based on claims of breach of contract would simply split the controversy between forums and waste judicial resources." This goes to the allegations of breach of warranty, fraud, and the antitrust claims.
 
 
 32
 There is no basis for finding that where parties contract a choice of forum the agreement governs only disputes directly under the contract. There are no cases of which we are aware where courts enforcing such clauses have divided expressly contractual disputes from the claims pendent to or arising out of the contractual relationship. Nor have courts refused to enforce a forum agreement because in transferring the controversy some issues would be left in the forum of first instance. On the other hand, in Bense the Second Circuit read the language of a forum selection clause that encompassed actions arising "directly or indirectly" from the contract as permitting the court to order transfer of the entire case, including the antitrust claims.[11] 683 F.2d at 720.
 
 
 33
 This is the better policy and we adopt it as our own. If we are to be true to the Supreme Court's directive in The Bremen to encourage commercial reliance on forum selection clauses, then we must decline the adoption of a crabbed, narrow limit on controversies subject to transfer for that would completely undo the usefulness of these agreements. It is difficult to imagine a commercial case where contractual issues could not and would not be intertwined with claims in tort or criminal or antitrust law. To so hold would be to revive the ancient distinction between forms of action long since abandoned as a mere vestige of English common law.
 
 
 34
 It is clear from the language of the agreement that it anticipated that any dispute arising out of or in connection with the dealer-manufacturer relationship was to be governed by the clause. Of necessity this includes causes of action arising directly from the contract and those causes concomitant. There is no logical reason not to give these parties the benefit of their bargain, nor is there any legal principle or precedent of which we are aware that dictates a contrary result.III. CONCLUSION.
 
 
 35
 For the reasons foregoing, we find the choice of forum clause in this contract is in all respects enforceable generally as a matter of federal law and specifically within the confines of this case. The judgment of the district court is accordingly REVERSED and this case is REMANDED with instructions to transfer this action to an appropriate court in the City of New York and the Borough of Manhattan.
 
 GODBOLD, Chief Judge, dissenting:
 
 36
 Whether state or federal law is to control the enforcement of choice-of-forum clauses in diversity cases is a difficult question. I am not able to agree with the majority's analysis.
 
 
 37
 The issue here is within the twilight zone between substance and procedure that has troubled federal courts since the decision of Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The enforceability of contract provisions is typically an issue of substance which a federal court sitting in its diversity jurisdiction must decide according to state law. The correctness of venue in the federal court system is, on the other hand, a procedural matter that is governed by federal statute and rules of procedure. The majority correctly point out that the imprecise labels "substance" and "procedure" do not take us very far in this case.
 
 
 38
 Alabama law is adverse to clauses, such as the one at issue here, which seek to limit "to a specified place" suits arising from future events. See Redwing Carriers, Inc. v. Foster, 382 So.2d 555, 556 (Ala.1980). Were Alabama law flatly in conflict with a constitutionally sound federal statute or rule of procedure, our inquiry would be at an end. This is not the case, however. The conflicting federal rule is decisional, see The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), and does not derive in any evident way from the constitution or federal statute.[1] This is therefore one of the "typical, relatively unguided" Erie choices that must be guided by "the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." Hanna v. Plumer, 380 U.S. 460, 468, 471, 85 S.Ct. 1136, 1142, 1144, 14 L.Ed.2d 8 (1965).
 
 
 39
 Applying a federal rule to choice-of-forum clauses will create an incentive for out-of-state plaintiffs to shop between state court and the local federal court. Assume that Ricoh, rather than Stewart, had been first to file suit in this dispute, and assume that the choice-of-law clause was not enforceable under Alabama law. If Ricoh found the law of Alabama more to its liking than that of the contracted-for forum, it could choose that law by filing suit in Alabama state court. The "one-way" nature of the federal removal statute, 28 U.S.C. Sec. 1441(b) would block the Alabama defendant's access to the local federal forum that would enforce the venue clause. This is exactly the sort of situation deplored by the Court in Erie. See 304 U.S. at 74-75, 58 S.Ct. at 820.
 
 
 40
 Were forum-shopping the only concern underlying Erie this would conclude the inquiry in favor of applying the state rule. Many courts have, however, supplemented the limited guidance given by Hanna with an analysis that balances the applicable state and federal interests. See C. Wright, The Law of Federal Courts 386 (1984); see also, Byrd v. Blue Ridge Elec. Coop., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). Careful analysis under Byrd also requires us to apply state rather than federal law. I preface this analysis with an examination of the treatment of two other familiar contractual devices.
 
 
 41
 Choice-of-forum clauses are often found together with two other similar but legally distinct types of clause. One type is the choice-of-law clause; the other, the consent-to-personal-jurisdiction clause. The enforceability of choice-of-law clauses, like choice-of-law matters generally, is governed by state law in diversity cases. See Klaxon v. Stentor, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The enforceability of consent-to-personal-jurisdiction clauses in diversity cases is likewise a state law matter, just as personal jurisdiction in a federal court is generally decided by reference to the law of the state in which the federal court sits. See Washington v. Norton Mfg., Inc., 588 F.2d 441, 444 (5th Cir.1979).
 
 
 42
 National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964), is not to the contrary. Szukhent decided the meaning of the term "agent authorized by appointment ... to receive service of process" under F.R.Civ.P. 4; it did not hold that such appointment plus service suffices to confer jurisdiction over the person. Szukhent did note in passing that the appointment-of-agent clause in the contract there was intended to constitute submission to personal jurisdiction in New York, and noted that such agreements had been regularly upheld, but the Court did not decide that validity and effect were governed by federal not state law. See id. at 315-16, 84 S.Ct. at 414; see also id. at 321-22 (Black, J., dissenting); 4 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1075 at 310 n. 51 (1969). I cannot agree with the majority either that the Court decided that the appointment-of-agent clause was effective as a consent to personal jurisdiction--for that issue was not before the Court--or that it upheld the clause "in all respects" without reference to state law. See id. at 316-17, 84 S.Ct. at 414-15.
 
 
 43
 Against this background, a holding that federal law is to govern the enforceability of choice-of-forum clauses is anomalous. Federal courts may be called upon to construe contractual language that appears to have been intended to waive objections both to personal jurisdiction and to venue, and perhaps to application of particular law as well.[2] I see no justification for applying a federal rule to the venue aspect of such a clause and state law to the rest. The more coherent approach would be to apply state law to the entire contract.
 
 
 44
 It is true that there are federal venue statutes but no federal statutes governing choice-of-law or personal jurisdiction in diversity cases. The anomaly noted above might vanish if the venue statutes could bear the weight that the majority would place upon them, but they cannot. The venue statutes serve to identify the courts that Congress--mindful of the convenience of the parties, Citizens & Southern National Bank v. Bougas, 434 U.S. 35, 44 n. 10, 98 S.Ct. 88, 94 n. 10, 54 L.Ed.2d 218 (1977)--thought suitable to hear diversity cases; they do not address the question whether or under what circumstances a party will be deemed to have antecedently consented to proceed in one or another of the districts in which venue is properly laid.[3] Moreover, the venue statutes themselves leave important blanks to be filled in by reference to state law, e.g., what is "a claim" and where a corporation is "incorporated or licensed to do business." 28 U.S.C. Sec. 1391. Thus the venue statutes do not express a wider federal interest that displaces state law in this area.[4]
 
 
 45
 Having canvassed the federal interests present, I turn to state policy. Redwing Carriers is the initial Alabama case on non-enforcement of a choice-of-forum clause. While state policies are little discussed, the court's promulgation of an Alabama rule is not mistakable. Moreover, the use of boilerplate choice-of-forum clauses to require the unsuspecting to litigate in a distant forum is a sharp practice that has been widely criticized. See, e.g., Szukhent, 375 U.S. at 325-33, 84 S.Ct. at 419-23 (Black, J., dissenting). Alabama has fashioned a rule, as it is entitled to do under our system of federalism. Applying principles of federalism correctly, we should respect the state's decision.
 
 
 
 *
 Opinion vacated
 
 
 [1]
 The appellee claims that this information is based on hearsay testimony that was stricken from the record. While the court below did strike the affidavit of John E. Stuart, it is not clear whether the order to strike was of his entire testimony or only the hearsay segments. The matters related here regarding corporate and document location do not appear to be hearsay
 
 
 [2]
 18.1 Dealer and Ricoh agree that this Agreement, and all documents issued in connection therewith, shall be governed by and interpreted in accordance with the laws of the State of New York. Dealer and Ricoh agree that any appropriate state or federal district court located in the Borough of Manhattan, New York City, New York, shall have exclusive jurisdiction over any case or controversy arising under or in connection with this Agreement and shall be a proper forum in which to adjudicate such case or controversy
 
 
 [3]
 When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order
 
 
 [4]
 The appellant in its brief raised a fourth issue, whether this court has jurisdiction over the motion to dismiss, arguing that such a motion is not final and hence not appealable under 28 U.S.C.A. Sec. 1292(a). But this matter comes to us under Sec. 1292(b) and hence is not governed by the final judgment rule applicable to Subsection (a). Appellant's counsel conceded this at oral argument and indicated that they no longer contest this issue
 
 
 [5]
 As Justice Harlan observed, "Erie and the cases following it have not succeeded in articulating a workable doctrine governing choice of law in diversity actions." Hanna v. Plumer, 380 U.S. 460, 474, 85 S.Ct. 1136, 1145, 14 L.Ed.2d 8 (1965) (Harlan, J., concurring)
 
 
 [6]
 Though Hanna dealt primarily with the status of the Federal Rules of Civil Procedure under Erie, Chief Justice Warren's opinion for the Court also considered "the typical, relatively unguided Erie choice", 380 U.S. at 471, 85 S.Ct. at 1144, and recognized that the outcome determinative approach of Guaranty Trust was unworkable save when viewed in conjunction with "the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." Id. at 468, 85 S.Ct. at 1142
 
 
 [7]
 Though Alabama decisions attempt to conflate the concepts, see Redwing Carriers, 382 So.2d at 556, jurisdiction and venue are distinct. Subject matter jurisdiction refers to the institutional power of a court to adjudicate a case; venue dictates which among several courts having jurisdiction is appropriate as most convenient. A court must be seized of both jurisdiction and venue if properly to hear a case. Robertson v. Railroad Labor Brd., 268 U.S. 619, 623, 45 S.Ct. 621, 623, 69 L.Ed. 1119 (1925); F. James & G. Hazard, Civil Procedure 617 (2d ed. 1977). Subject matter jurisdiction cannot be created by contract, Jackson v. Ashton, 33 U.S. (8 Pet.) 148, 149, 8 L.Ed. 898 (1834); venue can, Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168, 60 S.Ct. 153, 154, 84 L.Ed. 167 (1939)
 There is no question here that Alabama courts have jurisdiction; the only question is whether they are the appropriate venue. Venue is generally governed by residence. When a corporation is a defendant it is generally deemed a resident wherever it does business. F. James & G. Hazard, supra at 618.
 
 
 [8]
 Some would suggest that this case ought to be controlled by Klaxon Co. v. Stentor Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). We do not agree. The Erie Doctrine and its substance/process distinction left unresolved the question whether state or federal choice of law rules, ordinarily viewed as procedural, were to govern actions in diversity. In Klaxon, the Court held that the rules of the state in which the federal court sat were controlling, even at the expense of inconsistency within the federal court system. Id. at 496, 61 S.Ct. at 1021. Klaxon 's viability was reaffirmed in Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975) (per curiam ) where the Supreme Court summarily reversed the former Fifth Circuit, warning us that a "federal court in a diversity case is not free to engraft onto those state [conflict of law] rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the State in which the federal court sits."
 The issue in this case, however, is not the legitimacy of a choice of law clause. Both states permit such clauses. Rather we are asked to enforce a choice of forum clause. For the reasons we explain above, the contractual selection of a forum is a choice of venue that is clearly governed by federal statute and case law. Klaxon is simply inapposite.
 
 
 [9]
 The purpose underlying the contractual provision here at issue seems clear. The clause was inserted by the petitioner and agreed to by the respondents in order to assure that any litigation under the lease should be conducted in the State of New York. The contract specifically [so] provided.... And it is settled, as the courts below recognized, that parties to a contract may agree in advance to submit to the jurisdiction of a given court
 375 U.S. at 315-16, 84 S.Ct. at 414.
 
 
 [10]
 Nor is the contract sufficiently ambiguous to come under the language of Citro Florida. The contract states clearly that New York law governs and that New York is the "exclusive" forum. It admits of no exception, while in Citro Florida that clause merely said that Brazil was a place of jurisdiction
 
 
 [11]
 "Although the complaint was brought pursuant to federal antitrust law, the gist of Bense's claim is that Interstate wrongfully terminated the agreement, thereby damaging Bense." 683 F.2d at 720
 
 
 [1]
 The Bremen was an admiralty case dealing with an international transaction. Although the Supreme Court has applied The Bremen in a non-admiralty case, see Scherk v. Alberto-Culver Co., 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1972), it did so in an international context. Facilitation of international trade was a policy concern extensively discussed by the Court both in The Bremen, 407 U.S. at 8-15, 92 S.Ct. at 1912-16, and in Scherk, 417 U.S. at 516-19, 94 S.Ct. at 2455-57. This circuit has applied The Bremen in an international context, Citro Florida, Inc. v. Citrovale, S.A., 760 F.2d 1231 (11th Cir.1985) and in a domestic case where the issue raised was founded on federal question jurisdiction, In re Firemen's Fund, 588 F.2d 93 (5th Cir.1979). As one commentator has noted, many of the courts that have applied The Bremen in domestic diversity cases have done so in the absence of a conflicting state rule, and have therefore not addressed the very real Erie problem that arises in the domestic context. See Gruson, Forum-Selection Clauses in International and Interstate Commercial Agreements, 1982 U.Ill.L.Rev. 133, 154-55
 
 
 [2]
 For example, the following clause is the subject of an appeal pending before this circuit, Lee Myles Assoc. Corp. v. Connor, 85-5059:
 New York Interpretation. This argument [sic] is being executed in the City and State of New York and shall be construed by and governed as to both form, substance and procedure, and rights and remedies, solely by the laws of the State of New York and in the Supreme Court of the State of New York for the County of New York.
 This language is said by one party to be merely a choice-of-law provision, while the other party argues that it determines both choice-of-law and choice-of-forum. Cf. Neirbo Co. v. Bethlehem Corp., 308 U.S. 165, 167-68, 175, 60 S.Ct. 153, 158, 84 L.Ed. 167 (1939) (consent to venue and consent to personal jurisdiction).
 
 
 [3]
 Nor do the venue statutes address the question of what constitutes waiver of objections to venue in the state courts of another state. The contractual provision at issue here speaks of "any appropriate state or federal district court located in the Borough of Manhattan, New York City, New York ..." Record at 29 (emphasis added). It is difficult to understand what federal purpose is served by refusing to apply state law to this aspect of the clause
 
 
 [4]
 Brown v. Pyle, 310 F.2d 95, 97 (5th Cir.1962), applied Byrd and Olberding v. Illinois Central R. Co., 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953), and found that the policy underlying the then federal venue statute outweighed the state interest embodied in a state non-resident motorist statute. The non-resident motorist statutes in Pyle and Olberding would have laid venue in a district where venue was improper under the federal statute. Here, venue in the Alabama district court is proper under Sec. 1391. Olberding made it impossible for a federal court in which a claim had arisen to hear a case over objection if neither all plaintiffs nor all defendants resided there. Unhappiness with the result in Olberding eventually led to the adoption of the "where the claim arose" provision of the present Sec. 1391(a). See generally 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3806 at 25-27 (1976)
 Other authorities of this circuit that assign a preponderant weight to a federal interest, e.g., Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969) (en banc); Monarch Ins. Co. v. Spach, 281 F.2d 401 (5th Cir.1960), emphasize the importance of a uniform federal trial procedure. The present issue is one that must be determined before trial and pretrial proceedings begin.