The STEWART ORGANIZATION, INC., et al., Plaintiffs,

v.

RICOH CORPORATION, et al., Defendants.

Civ. A. No. 84–AR–2460–S.

United States District Court, N.D. Alabama, S.D.

Sept. 30, 1988.

Janet L. Humphreys, F.A. Flowers, III, Joseph W. Letzer, Burr & Forman, Birmingham, Ala., for plaintiffs.

Ralph H. Yeilding, Mac M. Moorer, Scott M. Phelps, Bradley, Arant, Rose & White, Birmingham, Ala., for defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

Pursuant to the mandate of the Court of Appeals for the Eleventh Circuit issued on September 20, 1988, 855 F.2d 762, in response to the mandate of the Supreme Court of the United States in *Stewart Organization, Inc. v. Ricoh Corp.*, —— U.S. ——, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), this court has for consideration the motion of defendants, Ricoh Corporation and Ricoh of America, Inc. (Ricoh), to transfer this action to the United States District Court for the Southern District of New York. This motion necessarily invokes 28 U.S.C. § 1404(a).

### Findings of Pertinent Facts

Plaintiff, The Stewart Organization, Inc. (S.O., Inc.), is an Alabama corporation with its principal place of business in Birmingham, Alabama. Plaintiffs, Walter H. Stewart and James S. Snow, Jr., are both resident citizens of Birmingham, Alabama. They are the controlling shareholders of S.O., Inc. Ricoh is a nationwide manufacturer of copier products. Its principal place of business is in West Caldwell, New Jersey, and it is incorporated in New Jersey. Exactly what distinction, if any, there is between Ricoh Corporation and Ricoh of America, Inc., for the purposes of this case, remains obscure.

On February 12, 1983, in Birmingham, Alabama, Mr. Stewart, on behalf of S.O., Inc., signed a "Ricoh Copier Products Retail Dealer Sales Agreement." This proposed agreement was forwarded to Ricoh and was executed on behalf of Ricoh by John Stuart, Ricoh's senior vice president, located at Ricoh's corporate headquarters in New Jersey. A copy of the fully executed agreement was returned to S.O., Inc., in March of 1983. Paragraph 18.1 of the agreement provides:

Dealer and Ricoh agree that this Agreement, and all documents issued in con-

nection therewith, shall be governed by and interpreted in accordance with the laws of the State of New York. Dealer and Ricoh agree that any appropriate state or federal district court located in the Borough of Manhattan, New York City, New York, shall have exclusive jurisdiction over any case or controversy arising under or in connection with this Agreement and shall be a proper forum in which to adjudicate such case or controversy.

On October 11, 1983, S.O., Inc., entered into another agreement with Ricoh. The only purpose of this second agreement was to expand the geographical territory previously allocated to S.O., Inc., by the February 12, 1983 agreement. This second or superseding agreement, also signed on behalf of Ricoh by Mr. Stuart, contains a provision identical to ¶ 18.1 of the February 12, 1983 agreement.

According to Ricoh, both the February 12 agreement and the October 11 agreement expired on March 31, 1984. On May 7, 1984, Mr. Stewart, on behalf of S.O., Inc., signed yet a third Ricoh dealer sales agreement.[1] This 1984 sales agreement does not contain the forum-selection clause. This agreement, if effective, provides that it "is intended to be a final expression, and a complete and exclusive statement regarding the subject matter, of this agreement and supersedes any prior oral statements or agreements between the parties." (Plaintiffs' Ex. No. 1).

S.O., Inc., testifies that this new agreement was forwarded to Ricoh headquarters and was signed on behalf of Ricoh by an authorized agent. (Transcript at 66). Mr. Stewart testified that Bob Banks, an agent for Ricoh located in Ricoh's Atlanta office, told Mr. Stewart that "the contract was back from New Jersey, that it was signed...." (Transcript at 67). Mr. Stewart also testified that he had two telephone conversations with Bill Johnson, Mr. Banks' boss in Ricoh's Atlanta office. According to Mr. Stewart, Mr. Johnson stated that "he [Johnson] had the signed contract sitting on his desk. It was back from—it had gotten back from New Jersey...." (Transcript at 67–68). No witness on behalf of Ricoh denied the substance of these conversations.

Ricoh stopped sending products to S.O., Inc. On September 28, 1984, S.O., Inc., filed this action alleging breach of contract, breach of warranty, fraud, and federal anti-trust violations.

In response to the complaint, Ricoh filed its motion to dismiss or to transfer this action to New York on the grounds of improper venue and *forum non conveniens.* The motion initially was predicated solely upon the forum-selection clause in the first and second dealer sales agreements, the only two agreements then brought to the attention of this court. Accidentally anticipating the view expressed by Justice Scalia in his dissent in *Stewart Organization, Inc. v. Ricoh Corp.,* —— U.S. ——, 108 S.Ct. 2239, 2245, 101 L.Ed.2d 22 (1988) (Scalia, J., dissenting), this court held that Alabama law, rather than federal law, governed the validity and enforceability of a forum-selection clause. This court's decision was reversed by the Eleventh Circuit in a split *en banc* decision. *Stewart Organization, Inc. v. Ricoh Corp.,* 779 F.2d 643 (11th Cir.1986). The Supreme Court granted certiorari in *Stewart Organization, Inc. v. Ricoh Corp.,* —— U.S. ——, 108 S.Ct. 225, 98 L.Ed.2d 184 (1987), and affirmed the Eleventh Circuit on grounds entirely different from those articulated by the Eleventh Circuit majority. *Stewart Organization, Inc.,* 108 S.Ct. at 2241. The Supreme Court remanded the cause to the Eleventh Circuit, which remanded it to this court.[2]

---

1. S.O., Inc., offered and the court received this newly discovered evidence during the evidentiary hearing on motion to transfer. (Tr. at 64). Notably, neither the Eleventh Circuit nor the Supreme Court was aware of such a document when these courts entertained the interlocutory appeal. *See Stewart Organization, Inc. v. Ricoh Corp.,* —— U.S. ——, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *Stewart Organization, Inc. v. Ricoh Corp.,* 779 F.2d 643 (11th Cir.1986).

2. The Eleventh Circuit acknowledged the Supreme Court's remand on September 20, 1988. *Stewart Organization v. Ricoh Corp.,* 855 F.2d 762 (11th Cir.1988).

This court must now consider Ricoh's motion to transfer this action to the United States District Court for the Southern District of New York in light of the Supreme Court's direction that this court "determine in the first instance the appropriate effect under federal law of the parties' forum-selection clause on respondent's [Ricoh's] § 1404(a) motion." *Id.* 108 S.Ct. at 2245.

### Conclusions of Law

Burden of Proof.

■ First, this court must decide which party has the burden of proof on Ricoh's motion to transfer. Ordinarily, the movant who invokes the doctrine of *forum non conveniens* and seeks a transfer has the burden of proof. *See* 1A J. MOORE, W. TAGGART & J. WICKER, *Moore's Federal Practice* ¶ 0.204 (2d ed. 1987). Ricoh would avoid this general rule by arguing that its forum-selection clause shifts the burden of proof to S.O., Inc. Ricoh bases this contention on the so-called *Bremen* test. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In *Bremen*, the Supreme Court held that forum selection clauses "are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Id.* at 10, 92 S.Ct. at 1913 (footnote omitted). Ricoh's contention fails for at least six reasons.

### The First Reason

First, *Bremen* is clearly distinguishable from the instant case. The Supreme Court in *Bremen* stated:

> There is strong evidence that the forum clause was a vital part of the agreement, and it would be unrealistic to think that the parties did not conduct their negotiations, including fixing the monetary terms, with the consequences of the forum clause figuring prominently in their calculations.

*Id.* at 14, 92 S.Ct. at 1915 (footnote omitted).

In addition, *Bremen* involved an *international* contract. The Supreme Court recognized that in such a case parties agreeing "in advance on a forum acceptable to both parties is an indispensable element in international trade...." *Id.* at 13–14, 92 S.Ct. at 1915. The Court specifically stated in *Bremen* that it was "not here dealing with an agreement between two Americans to resolve their essentially local disputes in a remote alien forum." *Id.* at 17, 92 S.Ct. at 1917. The Court clearly narrowed its holding in *Bremen,* and narrowed *Bremen's* subsequent application, by stating that the reasons to enforce the forum-selection clause are compelling *only if the clause is a result of a "freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power...." Id.* at 12, 92 S.Ct. at 1914 (footnote omitted) (emphasis supplied). The instant case does not deal with an international contract. There is nothing to demonstrate that the forum-selection clause here was an indispensable part of the agreement. In addition, of course, a central contention of S.O., Inc., is that this contract, including its forum-selection clause, were not freely negotiated and were the product of fraud. (Tr. at 61, 71). In light of the third document that Mr. Stewart signed on May 7, 1984, this court is not sure that the document that finally established whatever relationship there existed between the parties even contains a forum-selection clause. Each of the cases cited by Ricoh to support the application of the *Bremen* test involves a valid, freely negotiated forum-selection clause. *See Brinderson–Newberg Joint Venture v. Pacific Erectors, Inc.,* 690 F.Supp. 891 (C.D. Cal.1988) (adopting state court's finding that forum-selection clause was not part of an adhesion contract and had been open to negotiation); *ARH Distributors, Inc. v. ITT Commercial Finance Corp.,* 1988 WL 17628 (N.D.Ill.1988) (adopting state court's conclusion that the forum-selection clause was valid); *Walker v. Carnival Cruise Lines, Inc.,* 1987 WL 28413 (N.D.Ill.1987) (plaintiffs asserted a claim of negligence and did not contest the validity of the governing contract); *Della Pelle v. First Commodity Corp. of Boston,* 1987 WL 19936 (E.D.Pa.1987) (plaintiff alleged that forum-selection clause should not be enforced be-

cause his claims were outside the scope of the clause and did not allege that the agreement was the result of fraud).

### The Second Reason

Even if the court should conclude that there was a forum-selection clause freely agreed to by S.O., Inc., Ricoh's contention that the burden then shifts to S.O., Inc., fails for a second reason. Assuming *arguendo* that this forum-selection clause is valid and represents the parties' solemn agreement as to the most appropriate forum, the Supreme Court in *Stewart Organization* holds that the clause should "receive neither dispositive consideration (as respondent [Ricoh] might have it) nor no consideration (as Alabama law might have it), but rather the consideration for which Congress provided in § 1404(a)." *Stewart Organization, Inc.*, 108 S.Ct. at 2245. Accordingly, by the law-of-the case a valid forum-selection clause is simply another factor that Ricoh, the moving party can argue in support of its contention that the case should be transferred to a more convenient forum.

### The Third Reason

Third, if the Supreme Court had thought that the existence of a forum-selection clause automatically shifts the generally recognized burden of proof, surely it would have said so in this case, which provided the perfect opportunity. It did not.

### The Fourth Reason

Fourth, this particular putative forum-selection clause requires that all litigation between the parties take place in a state *or* federal court located in the Borough of Manhattan. It does not state a preference between state and federal court. For aught appearing, if S.O., Inc., had felt bound by this clause, it could have left out its federal anti-trust claim and could have filed its complaint in a *state* court in Manhattan, from which Ricoh could not have removed it to a federal court if the forum-selection clause, as exercised by the selector, were honored by the New York federal court. The ambiguous nature of this particular forum-selection clause militates against any persuasive power it might oth-erwise have. This court does not have the power to transfer this case to a *state* court in Manhattan even if S.O., Inc., should voluntarily dismiss its federal claim. This court should not be required to force S.O., Inc., to comply with a contractual provision with which S.O., Inc., could have fully complied in a way beyond the power of this court to accomplish under 28 U.S.C. § 1404(a).

### The Fifth Reason

Any presumption as to the appropriate forum arising out of a forum-selection clause should depend to a large degree on the *reasonableness* of the clause. Here, neither party, nor any of the witnesses or documents, is located in New York, much less in Manhattan. The selection of Manhattan as a forum makes little sense. This lack of reasonableness may explain why the third agreement between the parties left out this clause entirely.

### The Sixth Reason

The fact that the parties actually signed a third agreement that did not contain a forum-selection clause, even if it never became binding, subtracts significantly from any presumption that the earlier clause might have created.

### *Forum Non Conveniens* Factors Generally Applicable

Having established that the burden remains on Ricoh and that the forum-selection clause is not here controlling, this court turns to an examination of the general principles for selecting the proper forum.

Ordinarily, a plaintiff's choice of forum is afforded considerable deference, especially when the incident giving rise to the cause of action occurred within that chosen forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 248–49, 102 S.Ct. 252, 262, 70 L.Ed.2d 419 (1981); 1 J. MOORE, W. TAGGART & J. WICKER, *Moore's Federal Practice* ¶ 0.145[5] (2d ed. 1988). This presumption can be overcome only when the private and public interest factors clearly point toward trial in an alternative forum, or if the defendant can show that the plaintiff chose a particular forum, not because it was convenient, but solely in order to ha-

rass the defendant or to take advantage of favorable law. *See Piper Aircraft Co.,* 454 U.S. at 249 n. 15, 253–54, 102 S.Ct. at 262 n. 15, 265–66; *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507–08, 67 S.Ct. 839, 842–43, 91 L.Ed. 1055 (1947).

Federal courts have consistently held that in order to obtain a transfer, the moving party must *clearly establish* that the balancing of interests favors transfer of the action from plaintiff's chosen forum to another *more convenient* forum. *See San Shoe Trading Corp. v. Converse, Inc.,* 649 F.Supp. 341 (S.D.N.Y.1986); *H.H. Robertson Co. v. Lumberman's Mut. Cas. Co. (KT),* 94 F.R.D. 578 (W.D.Pa.), *affirmed* 696 F.2d 982 (3rd Cir.1982); *Payne v. AHFI Netherlands B.V.,* 482 F.Supp. 1158 (N.D.Ill.1980); *Lee v. Ohio Casualty Ins. Co.,* 445 F.Supp. 189 (D.Del.1978). In addition, federal courts have consistently held that if the equities only *slightly* favor a transfer, the plaintiff's choice should not be disturbed. *See Phillips v. S. Gumpert Co.,* 627 F.Supp. 725 (W.D.N.C.1986); *Houk v. Kimberly–Clark Corp.,* 613 F.Supp. 923 (W.D.Mo.1985); *Aguero v. Christopher,* 481 F.Supp. 1272 (S.D.Tex. 1980). Having established the degree of Ricoh's burden, this court now turns to a weighing of the relevant factors.

The controlling federal statute, recognized in this case by the Supreme Court as the primary source of instruction, states:

> For the convenience of parties and witnesses, in the interest of justice, the district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

The implementation of this statute requires a district court to analyze, on a case-by-case basis, the various factors peculiar to each individual case. Generally, these factors are broken down into two categories: "public interests" and "private interests." *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December, 1984,* 809 F.2d 195 (2d Cir.1987), *cert. denied, Executive Committee Members v. Union of India,* —— U.S. ——, 108 S.Ct. 199, 98 L.Ed.2d 450 (1987). Private interests include: location of the witnesses (especially witnesses beyond compulsory process that are essential to a defense), relevant documents, cost of production of those documents, the situs of the cause of the action, the location of the real parties in interest, and in a contracts case, relevant contractual terms such as a forum-selection clause. Public interests include: the applicable law, the forum with the greatest interest in the litigation, imposing jury duty on citizens with some interest in the controversy, and docket congestion.

Private Interests

(a) Availability of Witnesses.

In the summer of 1982, a Ricoh agent approached S.O., Inc., with the prospect of S.O., Inc.'s selling Ricoh copiers in the Alabama area. (Tr. at 29). Mr. Stewart's initial contact was with Charles Kidd of Ricoh's Atlanta office. (Tr. at 54). Mr. Kidd is no longer an employee of Ricoh but is a resident citizen of Anniston, Alabama. (Tr. at 54). This initial contact led to a meeting in Birmingham in the fall of 1982. The persons at this meeting on behalf of S.O., Inc., were Mr. Stewart; Larry Coker, formally with S.O., Inc., and presently residing in Tuscaloosa, Alabama; and Tom Tapley, now a resident of Birmingham, Alabama. (Tr. at 57). Representing Ricoh were Bob Banks, Ricoh's agent at Ricoh's Atlanta office, and presently a Ricoh employee; Bill Johnson, no longer a Ricoh employee, and presently residing in Dallas, Texas; Ted Henry, no longer a Ricoh employee, and presently residing in Jackson, Mississippi; and Bill Watson, no longer a Ricoh employee, and presently residing in Dallas, Texas. (Tr. at 30–31). According to Mr. Stewart, this meeting primarily involved Ricoh's representatives soliciting S.O., Inc., to become a Ricoh dealer. (Tr. at 30, Banks' dep. at 15).

In February of 1983, S.O., Inc., signed the first agreement. Present at that signing in Birmingham were Mr. Coker of S.O.,

Inc., and Mr. Banks of Ricoh. (Tr. at 59–60). In October of 1983, Mr. Stewart signed a second agreement on behalf of S.O., Inc. Also present at that signing in Birmingham were Dan Hassler, formerly with S.O., Inc., and now residing in Birmingham, Alabama; and Mr. Banks, of Ricoh. (Tr. at 63). Mr. Stewart signed a third proposed contract on May 7, 1984. (Tr. at 64). According to Mr. Stewart, present at that signing in Birmingham were Messrs. Banks, Hassler, and Steve Denson, sales manager for S.O., Inc., and currently a resident of Birmingham, Alabama. (Tr. at 65).

Clearly, Messrs. Banks, Johnson, Henry and Watson are beyond the compulsory process both of this court and of the District Court for the Southern District of New York. Messrs. Coker, Tapley, Hassler, Denson and Kidd are within the compulsory power of this court but not within the reach of the Southern District of New York.

According to James William Ivy, senior vice president of Ricoh, the Ricoh employees most familiar with any records regarding warranty claims, products and product specifications, dealer billing, invoices, and amounts owed to or from a particular Ricoh dealer, are located in West Caldwell, New Jersey. (Defendants' Ex. No. 2 at 25–26). In addition, the ultimate decision-making authority as to whether a portion of a contract can be changed or altered is with John Stuart, senior vice president at Ricoh's corporate headquarters in New Jersey.

Lastly, counsel for Ricoh asserted during the evidentiary hearing:

[T]here will be some individuals who can be subpoenaed in New York who cannot be subpoenaed here [Birmingham]. There will be some individuals who can be subpoenaed here that cannot be subpoenaed in New York. But the bulk of the litigation will be dealing with individuals remote to both locations.

(Tr. at 42).

The convenience-of-witness factor favors this court because more witnesses reside nearer Birmingham than Manhattan. It should be noted that at least one United States Court of Appeals has held that although one party asserts that witnesses it needs and much of its evidence are located in a district different from the opposing party's forum choice, convenience of witnesses does not weigh in favor of transfer *when the party who chose the forum claims that its witnesses are within the chosen district. Federal Deposit Insurance Corp. v. Citizens Bank & Trust Co. of Park Ridge, Ill.,* 592 F.2d 364, 368 (7th Cir.1979); *cert. denied* 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1980). This is certainly true of many of S.O., Inc.'s witnesses.

(b) Availability of Documents.

According to various witnesses, no documents relevant to this action are located in New York. (Ivy deposition, p. 81, Tr. at 72). However, according to Mr. Ivy, various documents regarding dealers and dealer contracts kept and maintained by Ricoh are located in Ricoh's corporate headquarters in New Jersey. (Defendants. Ex. No. 2 at 13–14). According to Mr. Banks, all documents relating to S.O., Inc.'s performance, as well as all of the documents relating to the performance of other Ricoh dealers in the southern zone, are maintained in Atlanta. (Banks' dep. at pp. 112–13; 118–19). On the other hand, Mr. Ivy stated that the only complete set of information regarding dealer documents and records is maintained at the corporate headquarters in New Jersey. (Defendants' Ex. No. 2 at 16–17).

While no documents are located in Manhattan, some relevant documents are in West Caldwell, others in Atlanta, and of course, S.O., Inc.'s documents are located in Birmingham. Although it may be more expensive for Ricoh to transport documents from New Jersey to Birmingham than it is to transport these same documents from New Jersey to New York City, Ricoh concedes, as it must, that it is more financially capable of staging this litigation in Birmingham than S.O., Inc., is capable of staging it in New York City. (Tr. at 6–7).

(c) The forum-selection clause revisited.

Ricoh arrives back where it began, pegging its entire case on its contention that "the law is clear that the presence of a valid forum-selection clause is determinative as to the parties' convenience...." (Defendants' brief at 9). The Eleventh Circuit erroneously came to this same conclusion in *Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir.1987), in which the Eleventh Circuit applied the *Bremen* test and concluded that a valid forum-selection clause is enforceable. Ricoh, in effect, asks this court to overrule the Supreme Court and to reinstate the opinion of the Eleventh Circuit. This court has indicated *supra* how it reads the Supreme Court. Not only is the validity of this clause at its inception not clear under the circumstances, but, assuming *arguendo* that the forum-selection clause was freely and fairly bargained for, the Supreme Court has made clear that the clause is neither dispositive, on the one hand, nor insignificant, on the other, but rather that it is an important factor to be weighed together with the other factors in a § 1404(a) analysis. *See Stewart Organization, Inc. v. Ricoh Corp.*, — U.S. —, 108 S.Ct. 2239, 2245, 101 L.Ed.2d 22 (1988). The Supreme Court remanded this case for this court to analyze *all* relevant factors, including the forum-selection clause, to determine the *forum non conveniens* issue.

In this case, the forum-selection clause facially indicates a meeting of the minds to the effect that New York is the proper forum. However, it is still unclear whether the first two contracts, either separately or in the aggregate, constitute, in fact or law, the controlling agreement between the parties. Mr. Stewart signed a third document prepared by Ricoh. It obviously does not contain a forum-selection clause. (Tr. at 66–68). His testimony finds no rebuttal by Ricoh. If the forum-selection clause was as important to the arrangement as Ricoh now says it was, why was it left out of the third document? The absence of the clause from the third document, whether that document is the controlling document or not, militates strongly against any elevation of the clause to predominant significance. If Ricoh's rationale were adopted, these parties could select, by contract drafted by Ricoh, a court located on the north slope of Alaska as the exclusive forum for resolving any and all potential controversies between the parties. The north slope contains as many witnesses and documents and contacts bearing on this controversy as Manhattan does. By Ricoh's rationale, the question of "convenience" can always be contractually established despite the fact that any honest application of the *forum non conveniens* factors would make the north slope laughable as a place for litigating the issues here presented.

In this case, the other private factors simply outweigh any weight to be given the private factor consisting of the forum-selection clause, no matter how relatively important this factor might be.

Public Interests

The interests of the general public also favor Alabama as the forum for trying this case. To begin with, the law applicable to S.O., Inc.'s anti-trust claim is federal law. Presumably both this court and a district court in New York are capable of applying the federal anti-trust laws. But because both the execution occurred and the performance of the contract took place only in Alabama, many, if not all, of the non-federal claims will be governed by Alabama law.[3] *See* 1A J. MOORE, W. TAGGART & J. WICKER, *Moore's Federal Practice* ¶ 0.311[1] (2 ed. 1987). The determination of which of the three documents constitutes the parties' final expression is also governed by Alabama law. New York law cannot control all of the issues hereby presented, but even assuming that New York law applies in some respects, Ricoh has not indicated any peculiarity or com-

---

**3.** It should be noted, however, that all three documents in question contain a choice of law clause. (Plaintiffs' Exhibit No. 1 at ¶ 18.1, Defendants' Exhibit No. 1 at ¶ 18.1, Defendants' Exhibit No. 2 at ¶ 18.1). That clause requires terms of the governing agreement to be interpreted by New York law. The applicability or enforceability of this provision is an issue not now before this court.

plexity pertaining to New York law that could preclude this court from competently applying New York law. In addition, it is inconceivable that New York law controls a fraud actually committed in Alabama, if a fraud was committed.

The Supreme Court has said that there is a "local interest of having localized controversies decided at home." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6, 102 S.Ct. 252, 258 n. 6, 70 L.Ed.2d 419 (1981) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)). The Court also stated in *Piper* that it is unfair to burden citizens in an unrelated forum with jury duty. *Id.* Also, the Supreme Court has held that the administrative difficulties flowing from court congestion is an additional "public interest" factor to be weighed in a *forum non conveniens* analysis. *Id.* Although the parties furnished no evidence on the subject, this court judicially knows that its docket is less congested than that of the Southern District of New York.[4] In this case, the localized interest is in Birmingham, Alabama. Citizens in the Southern District of New York have no relation to this action whatsoever.

Furthermore, Ricoh has presented no evidence to indicate that the S.O., Inc., chose the Northern District of Alabama in order to vex or to harass Ricoh, or to take advantage of favorable law.

Ricoh's evidence does not overcome the presumption in favor of the plaintiffs' choice of forum. Ricoh's evidence, taken in its most favorable light, suggests merely a shifting of the convenience and expense by contractual agreement. Federal courts have consistently held that a mere shifting of inconvenience and expense from the defendant to the plaintiff does not overcome plaintiff's choice of forum. *See Sorrels Steel Co. v. Great Southwest Corp.*, 651 F.Supp. 623 (S.D.Miss.1986); *Third Nat'l Bank in Nashville v. Shearson Equipment Management Corp.*, 619 F.Supp. 907

(M.D.Tenn.1985); *Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Stanley*, 585 F.Supp. 610 (N.D.Ill.1984); *Vassallo v. Neidermeyer*, 495 F.Supp. 757 (S.D.N.Y.1980).

Conclusion

Not only because of the presumption favoring a plaintiff's choice of forum and Ricoh's failure here to present evidence sufficient to rebut that presumption, but because both the private and public interests militate against a transfer to Manhattan, this court concludes that the Northern District of Alabama is an entirely appropriate forum for trying this action. Accordingly, Ricoh's motion to transfer this action from this court to the United States District Court for the Southern District of New York will by separate order be denied.

---

**4.** S.O., Inc., cites *Annual Report of Director of the Administrative Office of the U.S. Courts*, Appendix 1, pp. 32–33 (June 30, 1987), to show routine civil actions in this court take thirteen months and civil actions in the Southern District of New York take 22 months. (Plaintiff's brief at 40).