Richard Dean TISDALE and Laura Reilly Tisdale, Plaintiffs,

v.

SHELL OIL COMPANY, etc., et al., Defendants.

Civ. A. No. 85–T–230–N.

United States District Court,
M.D. Alabama, N.D.

July 14, 1987.
On Motion to Alter or Amend
Oct. 27, 1988.

Julian McPhillips, McPhillips, De Bardelaben & Hawthorne, Montgomery, Ala., for plaintiffs.

Richard E. Broughton, Ball, Ball, Duke & Matthews, Montgomery, Ala., L. Chris But-

ler, Shell Oil Co., Houston, Tex., for Shell Oil Co.

James Hampton, McLain & Hampton, Montgomery, Ala., Glen M. Boudreaux, Kirklin, Boudreaux & Joseph, Houston, Tex., for Saudi Petrochemical Co.

## MEMORANDUM OPINION

MYRON H. THOMPSON, District Judge.

This cause is now before the court on a motion filed by defendant Saudi Petrochemical Company (otherwise known as "SADAF"), and joined in by defendant Shell Oil Company, to have this cause dismissed based, first, on a contractual "forum selection clause" and, second, on principles of *forum non conveniens*. For reasons that follow, the motion should be granted and this cause dismissed, albeit without prejudice.

### I.

Plaintiffs Richard D. and Laura R. Tisdale, a married couple, claim that SADAF, acting on behalf of Shell Oil, offered to employ Mr. Tisdale in the Saudi Arabian offices of the two oil companies in August 1984. Mr. Tisdale apparently accepted the offer shortly after it was made, and the couple left for Saudi Arabia sometime thereafter. On approximately January 5, 1985, SADAF and Shell Oil allegedly terminated Mr. Tisdale's employment without justification. Furthermore, according to the Tisdales, SADAF and Shell Oil wrongfully withheld their passports for several days and then prevented them from taking various personal possessions with them. On the basis of these allegations, the Tisdales have sued SADAF, Shell Oil, and several individual employees of the two companies; they charge the defendants with breach of contract, fraud, conversion of property, and false imprisonment.

### II.

SADAF employed Mr. Tisdale pursuant to a contract signed by both parties. The contract contained a choice of forum clause requiring that all disputes arising under the contract, which the parties cannot resolve between themselves, must be referred to the Labor Commissions of the Kingdom of Saudi Arabia for resolution. The clause reads that

> If at any time any question, dispute, difference, or controversy shall arise between the parties hereto with respect to the provisions of this Contract, the parties shall make a good faith effort to settle such dispute by whatever means they deem appropriate. Any dispute which the parties are unable to amicably settle after such effort shall be referred to the Labor Commissions of the Kingdom of Saudi Arabia. The decision rendered by these authorities shall be final and binding on both parties.

SADAF and Shell Oil contend that this clause requires that the Tisdales bring this lawsuit in Saudi Arabia.

Until recently the law was unsettled in this circuit as to whether Alabama's across-the-board prohibition against enforcement of choice of forum clauses in contracts, as set forth in *Redwing Carriers, Inc. v. Foster*, 382 So.2d 554, 556 (Ala.1980), was applicable in federal diversity cases, such as this one. *See Stewart Organization, Inc. v. Ricoh Corporation*, 779 F.2d 643 (11th Cir.), *vacated*, 785 F.2d 896 (11th Cir.1986). However, recently, on February 23, 1987, the Eleventh Circuit sitting *en banc* finally resolved this issue, finding that the state's prohibition was not applicable. 810 F.2d 1066 (11th Cir.1987) (per curiam). The appellate court reasoned that federal, rather than state, law determined the effect of forum selection clauses, and, applying the teachings of the Supreme Court in *M/S Bremen v. Zapata Off-Shore Company*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the court concluded that under federal law there was no blanket prohibition against such clauses. In *M/S Bremen*, the Supreme Court rejected, as out-moded, the notion that forum selection clauses should be disfavored by courts; instead, the Court advanced that such clauses should be viewed as *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable"

under the circumstances. *Id.*, at 9–12, 92 S.Ct. at 1913–14. *See also Stewart*, 810 F.2d at 1069.

Moreover, and more significantly here, the *M/S Bremen* Court noted the particular importance of forum selection clauses in the context of international contracting. First, the Court emphasized the important role that such clauses play in fostering international trade. The Court observed that "We cannot have trade and commerce in world markets and international waters exclusively on our terms, governed by our laws, and resolved in our courts," *id.*, 407 U.S. at 9, 92 S.Ct. at 1913; the Court explained that "The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts." *Id.*, at 9, 92 S.Ct. at 1912. Second, the Court emphasized the greater practical significance of forum selection clauses in international contracting, over domestic contracting, because of the greater number of possible forums for resolution of disputes and because of the great differences among the laws in these forums. The Court explained that "The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting." *Id.*, at 13–14, 92 S.Ct. at 1915. The Court then ended that "in light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should be set aside." *Id.*, at 15, 92 S.Ct. at 1916.

Relying on *M/S Bremen*, the Eleventh Circuit in *Stewart* articulated a number of circumstances that would satisfy the "strong showing" needed to set aside a forum selection clause in a contract. The first is where "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Id.*, at

1069, *quoting M/S Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916. The appellate court specifically found that Alabama has no such strong public policy as would prohibit enforcement of forum selection clauses in federal courts relying on diversity jurisdiction. *Stewart*, at 1069–70. As a federal district court sitting in Alabama, this court is bound by this finding.

■ Other circumstances that would justify not enforcing a forum selection clause, according to the *M/S Bremen* and *Stewart* Courts, are where the contract is void because it was a product of "fraud, undue influence or overweening bargaining power." *M/S Bremen*, 407 U.S. at 12, 92 S.Ct. at 1914; *see also Stewart*, at 1070. Here, the record does not substantiate a finding that the employment contract between Mr. Tisdale and SADAF, or that the forum selection clause in the contract, was a product of fraud; indeed, Mr. Tisdale has presented no evidence whatsoever to that effect.[1]

Nor does the record support a finding of such undue influence or unequal bargaining as would justify a court taking the extraordinary step of invalidating an otherwise valid provision in a contract. Admittedly, the contract appears to be a "form" contract, and therefore the forum selection clause could be considered "boilerplate"; however, such contracts are not automatically unenforceable, though in reviewing such contracts a court must be very sensitive to the strong possibility of overweening bargaining power. Mr. Tisdale is college educated in computer science; he has in the past entered into a number of employment relationships, including an employment stint in Saudi Arabia prior to the events at issue here; and his employment experience includes supervising and managing over 100 people at a time, supervising and implementing large "systems" projects, and planning budgets of up to $225 million. Mr. Tisdale appears to be a knowledgeable, sophisticated and worldly person, fully capable of dealing competent-

---

1. To be sure, the Tisdales allege in count II of their complaint that SADAF and Shell Oil fraudulently induced Mr. Tisdale to enter into an employment relationship with SADAF. The Tisdales have, however, so far presented no evidence to the court to support this allegation.

ly and effectively with others, not only on a domestic scale but an international one as well.

Furthermore, the contract that he signed, in its English version, is easily understandable to a lay person; it is very simple, straight-forward, and short, and it avoids legal terminology, using an everyday English vocabulary. The contract was clearly written with the intent that a layperson be able to understand it easily and fully, and be able to appreciate the legal ramifications of signing it; moreover, the forum selection clause itself is not in fine print or hidden in a mass of verbiage, but instead is a brief clause in bold print openly and readily apparent and intelligible to any one reading the contract.

It would therefore strain belief to infer from these facts that someone of Mr. Tisdale's knowledge and sophistication has been the victim of pressured salesmanship or unfair bargaining power by SADAF when there is not direct evidence of such. *See, e.g., Bense v. Interstate Battery System of America*, 683 F.2d 718, 722 (2nd Cir.1982). This court must conclude that when Mr. Tisdale signed the contract he knowingly and voluntarily agreed to every provision in the contract.

■ Finally, a forum selection clause may be invalidated "if the chosen forum is *seriously* inconvenient for the trial of the action." *Stewart*, at 1070, *quoting M/S Bremen*, 407 U.S. at 16, 92 S.Ct. at 1916 (emphasis in original). To meet this requirement, the party opposing the clause must "show that trial in the contractual forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain." *Stewart*, at 1070, *quoting M/S Bremen*, 407 U.S. at 18, 92 S.Ct. at 1917.

The Tisdales argue that they cannot afford the costs of litigating this suit in Saudi Arabia. The court must reject this argument for a number of reasons. First, the Tisdales have provided the court with no factual basis for their conclusory assertion that the costs of litigation in Saudi Arabia would be prohibitive. There is no evidence of the financial condition of the Tisdales, and this court is completely unaware of the costs of litigation in Saudi Arabia before the Labor Commissions. Moreover, if the procedures before the Labor Commissions are, in fact, arbitration or a form thereof, as the Tisdales state in an affidavit to the court, the costs may very well be much less than that required in a full-blown trial in federal court in the United States, which can be very costly. The Tisdales complain specifically about the costs of having to travel back to Saudi Arabia. However, the Tisdales have presented nothing to the effect that their actual presence would be required for their case to proceed in Saudi Arabia.

Furthermore, it should be remembered that this court is not dealing with an agreement between two Americans to resolve their essentially local dispute in a remote forum; if this were the case, then the reasonableness the forum selection clause would be highly suspect. Rather, here, the contract was international in scope, and each party should have reasonably anticipated that resolution of any disputes under the contract would not necessarily be in his or her own back yard, absent a contractual provision requiring such. Therefore, "where it can be said with reasonable assurance that at the time they entered the contract, the parties to a freely negotiated private international commercial agreement contemplated the claimed inconvenience, it is difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable." *M/S Bremen*, at 16, 92 S.Ct. at 1916–17.

■ The Tisdales also argue that the forum selection clause should be invalidated because they left Saudi Arabia under a threat of arrest and they are afraid to return to Saudi Arabia. It appears that, at the time Mr. Tisdale left Saudi Arabia, he had defaulted on a loan and the loan company was threatening to have him arrested. There is no evidence before the court that this threat of arrest remains imminent upon Mr. Tisdale's return. Moreover, even

if the threat remains true, there is no evidence before this court that either the loan between Mr. Tisdale and the loan company, or Mr. Tisdale's default on that loan, had anything to do with SADAF and the issues now before this court. The issue for this court is whether the issues in this lawsuit could receive a fair hearing in Saudi Arabia, and there is no evidence that the Labor Commissions of the Kingdom of Saudi Arabia would not be fully open to the Tisdales and would not fairly and justly resolve the dispute between the Tisdales and SADAF and Shell Oil. Moreover, as already stated, it is unclear from the record that the Tisdales' actual presence would be required in the arbitration proceedings before the Labor Commissions. Also, Mr. Tisdale has not enlightened the court on whether he, in fact, still owes the loan, and why, if he does, he has not paid it.

■ The Tisdales also argue that their lawsuit against the defendants is premised on an oral employment contract with SADAF, not the later written contract Mr. Tisdale entered into with SADAF, and that, as a result, the forum selection clause in the written contract is not applicable. It is apparent that the written contract superseded any earlier oral contract, and that the written contract controls here. The Tisdales' argument is but a hollow effort to get around the clause.

Moreover, it is apparent that all of the Tisdales' claims against the defendants are in some manner connected with Mr. Tisdale's employment with SADAF, and that the forum selection clause in the contract covers any dispute related to the employment; as a result, all the claims are controlled by the clause in the contract. The treatment in the same manner of the contract claim and all claims connected with

the contract claim "promotes a more orderly and efficient disposition of the case in accordance with the parties' intent." *Stewart*, at 1070. As the Eleventh Circuit further stated in *Stewart*, "This is consistent with the Supreme Court's directive in *M/S Bremen* to encourage commercial reliance on forum selection clauses and thus keep intact the usefulness of these agreements. Commercial contractual issues are commonly intertwined with claims in tort or criminal or antitrust law." *Id.*[2]

Finally, there is another compelling reason for not too hastily setting aside the clause at issue. The clause posits not only the situs of any suit, but the specific tribunal and the procedure for resolving the dispute; as stated earlier, the Tisdales refer to the procedure before the Labor Commissions of the Kingdom of Saudi Arabia as arbitration. Therefore, for this court to entertain this lawsuit it would also have to invalidate the so-called arbitration requirement in the contract, for this court cannot accord such procedures to the parties. In *Scherk v. Alberto–Culver Company*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), the Supreme Court wrote that arbitration clauses, in particular in the international context, should be, like forum selection clauses, enforced absent special and unusual circumstances warranting setting them aside. *Id.*, at 519, 94 S.Ct. at 2457. Here, for the reasons given for not invalidating the parties' agreement as to the situs of this lawsuit, the court also declines to invalidate their agreement as to the tribunal and means for resolution of this lawsuit.

### III.

■ This lawsuit is also due to be dismissed on the ground of *forum non conve-*

2. Also, as demonstrated in Part III of this memorandum opinion, the three non-contractual claims should be tried in Saudi Arabia irrespective of what the contract provides. The conversion and false imprisonment claims arose in Saudi Arabia and are subject to the laws of Saudi Arabia. And, while the misrepresentation claim arose in part in the United States, it appears that the fraud claim is inextricably intertwined with the contract claim; at least, the Tisdales have not shown otherwise. Of course,

if the Tisdales are willing to try the fraud claim without contending that SADAF and Shell Oil breached the contract and without injecting conversion and false imprisonment issues, then this court might be willing to sever the fraud claim and allow it to proceed in the United States; the fraud claim would then be a purely domestic claim. The Tisdales may request such by filing a motion for reconsideration within ten days from the date of this memorandum opinion.

658

*niens.* Under this doctrine, "a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). "Wisely, it has not been attempted to catalogue the circumstances which will justify or require either grant or denial of remedy. The doctrine leaves much to the discretion of the court to which plaintiff resorts, and experience has not shown a judicial tendency to renounce one's own jurisdiction so strong as to result in many abuses." *Id.,* at 508, 67 S.Ct. at 843. Nevertheless, in determining whether *forum non conveniens* should apply, a trial court should consider a number of private interest factors affecting the parties and public interest factors affecting the convenience of the forum; the trial court should also determine the adequacy of the alternative forum. *Id.,* at 506–09, 67 S.Ct. at 842–43.

The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance of willing witnesses; (3) the possibility of viewing the premises if a view would be appropriate; and (4) all other practical problems that make a trial of a case easy, expeditious and inexpensive. Public interest factors which should be considered include (1) the local interest in the controversy; (2) the administrative difficulties caused by congestion of local court dockets with foreign lawsuits; (3) the avoidance of unnecessary problems in choice of law and the application of foreign law; and (4) the imposition of jury duty on residents of a jurisdiction having little relation to the controversy. *Id.,* at 508, 67 S.Ct. at 843. The Supreme Court has indicated, however, that, in considering and weighing these factors, a trial court must show greater deference to the plaintiff's chosen domestic forum where the plaintiff is a resident or citizen of that forum. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255–56, 102 S.Ct. 252, 266, 70 L.Ed.2d 419 (1981).

After considering and weighing all of the above factors together, the court must conclude that they decidedly point in favor of dismissal of this cause. First of all, the events at issue here—the alleged contractual breach, imprisonment, and conversion—all occurred in Saudi Arabia, and it appears that the fraud claim, which occurred in part in the United States, is inextricably intertwined with the contract claim. Therefore, most of the witnesses and documents are in Saudi Arabia, and are more easily accessible there. Furthermore, it is clear that Alabama has no interest whatsoever in the disputes in this lawsuit, and as a result, it cannot be gainsaid that it would be an imposition on Alabama residents to resolve these disputes; on the other hand, Saudi Arabia has a clear and substantial interest in this litigation since the disputes, for the most part, arose in, or otherwise had some substantial contact with, that country.

Second, the applicable law for the contract is that of Saudi Arabia, because the contract specifically requires such; it is also the law for the conversion and false imprisonment claims because those claims arose in Saudi Arabia; and the law would also be applicable to the misrepresentation claim to the extent this claim is intertwined with the contract claim. This court, however, is totally unfamiliar with such law. In *Reyno* where the applicable foreign law was Scottish, the Supreme Court expressly stated that the need to apply foreign law points toward dismissal. 454 U.S. at 260, 102 S.Ct. at 268. *See also De Oliveira v. Delta Marine Drilling Co.,* 707 F.2d 843, 845 (5th Cir.1983) (per curiam). Here, the need to apply foreign law is even more troublesome and burdensome than in *Reyno,* because the law is not only foreign, it has no apparent basis in or commonality with to American law.

Furthermore, the application of foreign law is greatly complicated by a language problem. Not only will the law to be applied be foreign, but the language in which the law is written will also be foreign. The likelihood of misapplication of the foreign law is therefore not only possible but probable because, before the law may be applied, it must suffer the inherent inaccuracies of translation compounded by those

inaccuracies which will surely result from a court having to apply laws with which it is totally unfamiliar.

To these language problems regarding the law must be added the problem that, under the contract between the parties, the controlling version of the contract is the Arabic version. The contract provides:

> This employment contract shall be executed in two originals (written in Arabic and English). In the event of any dispute related to this Agreement the Arabic version shall prevail.

Since this court cannot read Arabic, it cannot give controlling weight to the Arabic version of the contract. The court can only assimilate and interpret an English translation.

Finally, there is no evidence that the law of Saudi Arabia is inadequate to address the claims presented in this lawsuit. *See Vaz Borralho v. Keydril Co.*, 696 F.2d 379, 392 (5th Cir.1983) ("The presumption … is that the substantive law of the foreign forum is adequate.") And, for the reasons given the Part II of this memorandum opinion, the court does not find convincing the Tisdales' contentions that trial in Saudi Arabia would be inconvenient and a threat to their safety. Indeed, trial in Saudi Arabia would allow the parties to pursue their bargained for, and perhaps less expensive, arbitration before the Labor Commissions.[3]

### IV.

Although the court has concluded that dismissal of this lawsuit without prejudice is warranted, the court believes that the dismissal should be based on the following conditions: first, that the defendants agree to service of process and jurisdiction in Saudi Arabia before the appropriate tribunal; second, that the defendants waive any applicable statute of limitations for the period of time this lawsuit has been pending in this court; and, third, that the defendants do everything within their power and

authority, both direct and indirect, to assure that, should it be necessary for the Tisdales to return to Saudi Arabia to pursue this lawsuit, they may do so safely. These conditions shall apply only if the Tisdales file suit in Saudi Arabia within 120 days from the date of this order. *See Vaz Borralho*, 696 F.2d at 394 (discussing similar conditions for dismissal). Also, if the Tisdales believe additional conditions are necessary, they may request such within ten days from the date of this memorandum opinion.

An appropriate judgment will be entered.

### ON MOTION TO ALTER OR AMEND

The court presently has before it several outstanding motions. Plaintiffs, Richard and Laura Tisdale, have moved this court to alter, amend, or vacate its decree of July 14, 1987. By the same motion, the Tisdales have moved that, in the event that the court does not alter its earlier decree, they be granted leave to sever their misrepresentation claim and dismiss the remaining counts of their complaint. In addition, plaintiffs have, by letter request, moved to amend an affidavit filed earlier. Moreover, plaintiffs have filed a subsequent motion to vacate dismissal of complaint based on the recent ruling of the U.S. Supreme Court in *Stewart Organization v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

On the defendants' side of the docket, the court has before it defendant Saudi Petrochemical Company's (SADAF) motion to dismiss plaintiffs' fraud claim; defendant Shell Oil Company's (Shell Oil) motion for dismissal of the fraud claim; defendant SADAF's motion for summary judgment; and defendant Shell Oil's motion to strike affidavit.

Having given due consideration to all of these motions, the court concludes that:

---

**3.** However, as stated in footnote 2, *supra*, the court might be willing to sever the fraud claim and let it proceed before a court in the United States, if the Tisdales agreed to certain conditions. Under these conditions, the fraud claim would be purely a domestic claim due to be tried domestically. Under these conditions the *Gilbert* factors might point in favor of retaining the fraud claim.

(1) plaintiffs' motions to vacate or alter this court's July 14, 1987, opinion should be denied;

(2) plaintiffs' letter request to amend affidavit should be granted;

(3) plaintiffs' request for leave to sever the misrepresentation claim should be denied;

(4) defendant Shell Oil's motion to strike affidavit should be denied;

(5) defendants' motions to dismiss and for summary judgment should be denied as moot; and

(6) this cause should again be dismissed without prejudice.

## I.

In this action, plaintiffs Richard and Laura Tisdale originally charged defendants with breach of contract, fraud, conversion of property, and false imprisonment. They claimed that, in August 1984, the defendants offered to employ Mr. Tisdale in their Saudi Arabian offices. Shortly thereafter, Mr. Tisdale accepted the offer, and the couple moved to Saudi Arabia. Then, on January 5, 1985, defendants allegedly terminated Mr. Tisdale's employment without justification. In addition, the Tisdales claim, defendants wrongfully withheld their passports for several days, and then prevented them from taking various personal possessions.

On July 14, 1987, this court issued a memorandum opinion granting defendants' motion to dismiss. In that opinion, the court gave two grounds for its decision: first, that the forum selection clause found in the employment contract between Mr. Tisdale and SADAF was enforceable under the recent *en banc* Eleventh Circuit opinion *Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066 (1987) (per curiam); and, second, that the action was due to be dismissed under the doctrine of *forum non conveniens*. Relying on these two independent grounds, the court concluded that dismissal without prejudice was appropriate. However, the court noted that it might be willing to consider permitting plaintiffs to sever the fraud claim and allow this claim to proceed in the United States.

## II.

The first issue to be addressed is what effect, if any, did the Supreme Court's ruling in *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), have on this court's contractual "forum selection clause" analysis in its earlier opinion. In that opinion, this court gave full effect to the choice of forum clause found in Tisdale's employment contract. The Tisdales argue that a broader range of considerations must be taken into account under the Supreme Court's analysis in *Stewart Organization* than was evidenced by this court's earlier resolution of the choice of forum issue. They point to language in the Supreme Court's decision which instructs that "The District Court also must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to private concerns, come under the heading of 'the interest of justice.'" *Id.*, at ——, 108 S.Ct. at 2244. The Tisdales argue that this court gave too little weight to these considerations in its earlier opinion; they contend that a reconsideration of the issue subsequent to the Supreme Court's resolution of *Stewart Organization* would lead this court to a determination contrary to its original decision.

The court cannot agree. It is true that the Supreme Court utilized "somewhat different reasoning" than did the Eleventh Circuit in resolving the forum selection clause issue in *Stewart Organization*. *Id.*, at ——, 108 S.Ct. at 2241. The Eleventh Circuit had treated the issue in a two-part analysis. First, the Eleventh Circuit addressed the issue of whether, in a diversity action, state or federal law should govern the enforceability of a forum selection clause, 810 F.2d at 1067. After determining that "[v]enue is a matter of federal procedure", the court then determined that *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), provided the proper analytical framework

under federal law to assess the enforceability of the forum selection clause at issue. *Id.*, at 1068–70. In contrast, the Supreme Court found that "federal law, specifically 28 U.S.C. § 1404, governs the parties' venue dispute," and discussed resolution of the enforceability question given the statutory considerations found in § 1404(a). 487 U.S. at ——, 108 S.Ct. at 2243–45.

A close reading of the Supreme Court's analysis in *Stewart Organization* leads the court to conclude that it does not fully resolve the issue involved in this litigation. This case does not involve a question of whether this case should be transferred to a different venue; rather, it concerns whether the case should be dismissed in this venue and litigated instead in a foreign forum. By its terms, § 1404 would not permit a transfer from this court to the Labor Commissions in Saudi Arabia. *See* 28 U.S.C.A. § 1404(a), (d). *See generally Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Consequently, the Supreme Court's analysis in *Stewart Organization* is inapplicable to the situation at hand.

The Ninth Circuit, in *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir.1988), recently reached a similar conclusion. In *Manetti–Farrow*, the court was confronted with the question of what law should apply in determining whether to enforce a forum selection clause in a diversity action. As in this case, the forum selection clause specified a foreign jurisdiction for resolution of any controversy regarding interpretation or fulfillment of a contract. The Ninth Circuit concluded that the applicable law was federal law, specifically the federal rule announced in *M/S Bremen*. *Id.*, at 512. In so concluding, the Ninth Circuit emphasized the differences between the case it was deciding and the Supreme Court's decision in *Stewart Organization:*

In *Stewart*, the Court decided that federal law applies to a motion to transfer venue under 28 U.S.C. § 1404(a) when venue is designated in a contractual forum selection clause. *Id.* at ——, 108 S.Ct. at 2245–50. The Court stated that because there was a federal statute, 28 U.S.C. § 1404(a), directly on point, the district court was required to apply federal law. *Id.* at ——, 108 S.Ct. at 2241. Our case involves a motion to dismiss, rather than to transfer venue, and because there is no federal rule directly on point the *Stewart* analysis is inapplicable. The Eleventh Circuit's en banc decision in *Stewart*, however, is helpful because it explains why federal law applies as a general principle to enforce forum selection clauses, without addressing the application of § 1404(a). *See Stewart Organization, Inc. v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir.) (per curiam) (en banc), *aff'd on other grounds*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

*Id.*, at 512 n. 2.

As was the Ninth Circuit, this court is convinced that the Eleventh Circuit will adhere to its rationale and holding in *Stewart Organization v. Ricoh Corp.* The Eleventh Circuit provided a general rule concerning the enforcement of forum selection clauses in diversity cases. While its analysis proved to be incorrect in the specific setting concerning a motion to transfer and involving a forum selection clause that specified a domestic venue, there is nothing to suggest that the analysis would not apply in full force in the case where the forum specified is a foreign venue and transfer is not possible.[1]

This does not end the analysis, however. The Tisdales also argue that this court, even if continues to adhere to the en banc Eleventh Circuit *Stewart Organization*'s analysis, should revisit its analysis under the facts of this case. They contend that, given their facts, the forum selection clause should be invalidated because en-

---

**1.** In any event, even if the Eleventh Circuit were to vary in its analysis of this question, this court's decision to dismiss the cause without prejudice would remain unchanged. Independent of the analysis of the forum selection clause, this court also concluded that the lawsuit was due to be dismissed on the ground of *forum non conveniens.* Plaintiffs have provided the court with no additional arguments as to why this holding should be modified.

forcement of the clause would, in effect, be "tantamount to dismissal of this action in its entirety." They claim that they do not have the financial wherewithal to support litigation in Saudi Arabia, and that they fear they would be arrested if they were to return to Saudi Arabia. These concerns were fully addressed by the court in its earlier memorandum opinion; the Tisdales have provided no new evidence that merits a change from the conclusions therein.

### III.

Count II of the Tisdales' complaint alleges that the defendants fraudulently represented to Richard Tisdale, while he was in the United States, that he was qualified for an employment position. Acting on this court's suggestion that it "might be willing to sever the fraud claim and allow it to proceed in the United States," the Tisdales have moved to sever this misrepresentation claim and dismiss all other remaining claims of the complaint. The defendants have opposed the motion to sever and dismiss.

■ The forum selection clause in the employment contract covers "any question, dispute, difference, or controversy ... [that] arise[s] between the parties with respect to the provisions of this Contract." Given this court's conclusion above that this clause is enforceable, the first issue to be addressed is whether the Tisdales' fraudulent misrepresentation claim is independent of and therefore can be severed from the employment contract.

The genesis of the Tisdales' misrepresentation claim is that defendants misrepresented to Richard Tisdale that he was qualified for an employment position when they knew or should have known that he was not. He claims that, in spite of the facts that his resume listed work experience in an OS/VS1 computer environment and that he listed OS/VS1 as a specialty area of training and experience in his job application, he had fully informed defendants that his experience in OS/VS1 was very limited. He contends that defendants reassured him

before he was hired that this limitation would be no problem, but that upon his arrival in Saudi Arabia, it was this very limitation that defendants relied upon in firing him.

In making this misrepresentation claim, Tisdale is in effect claiming that the defendants misrepresented to him what the scope of his proposed employment would be and what qualifications would be necessary in the offered position. The employment contract Tisdale signed discusses the scope of employment envisioned by the parties:

> The COMPANY may adjust or modify the specifics of work at any time in view of EMPLOYEE's qualifications, experience, ability and performance. The Company may not, however, change permanently the essential work agreed upon unless EMPLOYEE agrees to such changes.

Article I, Section D.

There can be no question but that Tisdale's misrepresentation claim is merely an attempt to accomplish via a tort claim what this court said he was precluded from doing in this forum under a contract claim: that is, argue that the defendants changed the definition of his scope of employment. The court sees no way to isolate Tisdale's misrepresentation claim from the terms of the employment contract. *See Stewart Organization,* 810 F.2d at 1070 ("commercial contractual issues are commonly intertwined with claims in tort or criminal or antitrust law"). *See also Manetti–Farrow, Inc.,* 858 F.2d at 514. The tort and contract claims are simply too closely related to be treated as truly independent. *Compare Manetti–Farrow, Inc., supra* (tort claims intertwined with contract claims); *Weidner Communications v. Faisal,* 671 F.Supp. 531, 537 (N.D.Ill.1987) (same); *Berrett v. Life Insurance Co. of the Southwest,* 623 F.Supp. 946, 949 (D.Utah 1985) (tort claims independent of contract claims). Consequently, the court concludes that the forum selection clause must be construed to cover this tort claim in addition to the contractual claims. *See Manetti–Farrow, Inc., supra; Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 203 (3rd Cir.),

*cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983); *Clinton v. Janger,* 583 F.Supp. 284 (N.D.Ill.1984) (collecting cases).

### IV.

Finally, the court continues to abide by its earlier decision that this case should be dismissed without prejudice. As before, however, the court believes that the dismissal should be conditioned on several agreements by the defendants. Specifically, the court concludes that dismissal without prejudice is appropriate if:

(1) defendants agree to service of process and jurisdiction in Saudi Arabia before the appropriate tribunal;

(2) defendants waive any applicable statute of limitations for the period of time this lawsuit has been pending in this country; and

(3) defendants do everything within their power and authority, both direct and indirect, to assure that, should it be necessary for the Tisdales to return to Saudi Arabia to pursue this lawsuit, they may do so safely.

These conditions shall apply only if the Tisdales file suit in Saudi Arabia within 120 days from the date of this order.[2]

An appropriate order will be entered.

---

**2.** Again, if the Tisdales believe that additional conditions are necessary, they may request such

within ten days from the date of this memorandum opinion.