Charles E. OWENS, et al., Plaintiffs,

v.

SUPERFOS A/S, Defendant.

No. Civ.A. 00–D–1098–S.

United States District Court,
M.D. Alabama,
Southern Division.

Aug. 31, 2001.

Henry Clay Barnett, Jr., Bruce Johnson Downey, III, Capell Howard PC, Montgomery, AL, for plaintiffs.

Phillip B. Dye, Jr., Vinson & Elkins, L.L.P., Houston, TX, Barry V. Frederick, Spencer A. Kinderman, Johnston, Barton, Proctor & Powell, LLP, Birmingham, AL, for defendant.

### MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant Superfos A/S's ("Defendant" or "Superfos") Motion to Dismiss Or, In The Alternative, For

More Definite Statement ("Motion"), filed on October 6, 2000. In its Motion, Defendant challenges the court's personal jurisdiction over it or, in the alternative, asks the court to dismiss the case on grounds of forum non conveniens. The court permitted limited discovery on the issue of personal jurisdiction. Having conducted limited discovery, Plaintiffs Charles Owens and Alan Palmer (individually "Owens" and "Palmer," collectively "Plaintiffs") filed a Response In Opposition ("Response") on April 30, 2001, supported in part by Plaintiffs' affidavits. Defendant filed a Reply on May 10, 2001, wherein it objected to numerous portions of Plaintiffs' affidavits. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendant's Motion is due to be denied and that Defendant's objections to Plaintiffs' affidavits are due to be overruled.

## I. FACTS

This diversity action arises out of a contract between Defendant, a holding company incorporated in Denmark, and Plaintiffs, who are Alabama citizens. At the time the contract was formed, Palmer was the Chief Financial officer of Superfos Construction, Inc. ("SCUS"), a wholly owned subsidiary of Defendant headquartered in Dothan, Alabama. Owens served as the President of SCUS and was also a member of the Superfos Group Management Board, an entity overseeing the business affairs of Defendant's subsidiaries and affiliates. (Moeller Aff. at 4; Owens Aff. at 95–96, 102.)

In August of 1999, a time when outside investors were expressing interest in acquiring SCUS, Defendant, through its President and Chief Executive Officer Peter Hojland, asked Plaintiffs to promote the value to interested parties so that a higher price could be obtained in the event of an actual sale. (Moeller Aff. at 4–5; Owens Aff. at 147–53.) Toward this end, at the behest of Hojland and with funds authorized by Defendant's Board of Directors, Plaintiffs worked on a Management Buyout Proposal. (Owens Aff. at 162–63, 173–78.) Substantial compensation had been assured Plaintiffs for their activities insofar as they risked retaliation by any eventual purchaser who was forced to pay an inflated price for SCUS. (*Id.* at 164–67.) Indeed, Hojland provided Plaintiffs with Success Fee Agreements under which a commission was guaranteed should the sale price of SCUS exceed a stipulated value. (Moeller Aff. at 4.)

SCUS did eventually change hands, and it is in the present action that Plaintiffs seek a remedy for the alleged breach of the Success Fee Agreements. (*Id.* at 6.) Superfos contends, however, that as a Danish corporation, it lacks sufficient contacts with the state of Alabama such that the court's exercise of jurisdiction would violate Due Process. In the alternative, it moves that the court dismiss this case on grounds of forum non conveniens.

## II. DISCUSSION

*Personal Jurisdiction*

When no evidentiary hearing on a motion to dismiss is conducted, a plaintiff must establish a prima facie case of personal jurisdiction over a non-resident defendant. *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990). A prima facie case is established if the evidence presented is sufficient to withstand a motion for judgment as a matter of law. *Id.* In considering the motion, the court construes the uncontroverted allegations in the complaint as true, and, where the parties' affi-

davits conflict, the court makes reasonable inferences in favor of the plaintiff. *Id.*[1]

The court's power over one's person derives from positive law and constitutional law. The Alabama long-arm statute authorizes personal jurisdiction to the fullest extent permitted by the United States Constitution. *See Martin v. Robbins*, 628 So.2d 614, 617 (Ala.1993). Federal courts are "bound by state law concerning the amenability of a person or corporation to suit, so long as state law does not exceed the limitations imposed by the Due Process Clause of the Fourteenth Amendment." *Pesaplastic C.A. v. Cincinnati Milacron Co.*, 750 F.2d 1516, 1521 (11th Cir.1985).

 The Due Process Clause protects one's liberty interests by shielding the individual from binding judgments in a forum with which he has established no meaningful contacts, ties or relations. The nature and quality of the contacts varies depending on whether the type of jurisdiction being asserted is general or specific. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir.2000). General jurisdiction exists whenever the defendant's connection with the forum state is "continuous and systematic"—there need be no nexus between the forum and the litigation. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). On the other hand, a court can assert specific jurisdiction over a person with a more attenuated connection to the forum when there is a sufficient nexus between the forum and the matter at issue. *Id.* at 414, n. 8, 104 S.Ct. 1868. Plaintiffs argue that the court can assert either kind of jurisdiction over Defendant; because the facts demonstrate a straightforward case of specific jurisdiction, the court sees no reason to address the issue of general jurisdiction.[2]

1. At this point it is necessary to address Defendant's objections to Plaintiffs' affidavits. Defendant objected to virtually every paragraph relied upon in Plaintiffs' briefs on grounds ranging from hearsay to the novel ground of ambiguity. While an objection is the proper form to contest such evidence, *see, e.g., Smith v. Southeastern Stages, Inc.*, 479 F.Supp. 593, 594–95 (N.D.Ga.1977), the form of Defendant's objections is offensive. Defendant provided an appendix listing over two-hundred paragraph numbers without offering any specific basis for its objection. The court cannot be expected to go through the affidavits "with a fine-toothed comb and pick out the certain provisions which the defendant (from their viewpoint) feel should be stricken." *Ernst Seidelman Corp. v. Mollison*, 10 F.R.D. 426, 428 (S.D.Ohio 1950). The burden on the defendant is "to do more than swing its bludgeon wildly." *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 579 (2d Cir.1969).

 Furthermore, a cursory glance at a sample of the objections suggests that few of them bear a scintilla of merit. Contrary to Defendant's assertions, the court is able to discern when Plaintiffs' pleadings accurately refer to Defendant. Furthermore, it can separate the wheat from the chaff in Plaintiffs' so-called "conclusory" and "speculative" allegations. Defendant's hearsay objections evince a fundamental lack of understanding of the Rules of Evidence. Finally, the court finds that Plaintiffs, given the nature of their positions with SCUS, do not lack personal knowledge to make the statements relevant to this matter. *See, e.g., In re The Charter Co.*, 92 B.R. 510, 515 (M.D.Fla.1988) ("The Court, moreover, can permissibly and reasonably infer from Mr. Caldabaugh's position as executive vice president and chief financial Officer of The Charter Company, that he has personal knowledge of the information set forth in the press release."). Nonetheless, the court will "implicitly" address any meritorious objection as needed in its consideration of this motion. *Smith*, 479 F.Supp. at 595. Yet as a whole, for the above-stated reasons, the court finds that Defendant's objections are due to be overruled.

2. The general rule is that where the "subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance

■ The court has specific jurisdiction over a party when a defendant has purposefully established minimum contacts within the forum state, provided the exercise of jurisdiction would comport with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Eleventh Circuit has developed a three-part test for minimum contacts:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve "some act whereby the defendant purposely avails itself of the privilege of conducting activities within the forum ..., thus invoking the benefits and protections of its laws." Third, the defendant's contacts with the forum must be "such that [the defendant] could reasonably anticipate being haled into court there."

*Vermeulen v. Renault U.S.A., Inc.,* 985 F.2d 1534, 1546 (11th Cir.1993) (internal citations omitted).

The contacts must be intentional; courts have no power over one whose contacts with the jurisdiction are random, fortuitous, or attenuated. *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174. As such, Defendant's reliance upon *Future*

*Technology Today, Inc. v. OSF Healthcare Systems,* 218 F.3d 1247 (11th Cir. 2000), is misplaced. In that case, a defendant non-profit with no prior connection to Florida hired plaintiff, upon recommendation, to upgrade its computer system in anticipation of the Y2K hoax. *Id.* at 1249. Assuming a one-time obligation, the defendant intended to have no continuing connection with the forum. *Id.* at 1251. In fact, it had little connection with the forum to begin with, having formed a contract in a single phone call and never visiting Florida until after the alleged breach. *Id.* Consequently, the Eleventh Circuit found minimal contacts lacking. *Id.*

Undoubtedly a single contract by itself is insufficient to establish minimum contacts in a party's forum, but when the parties' prior course of business bears a "substantial connection" to the forum in question, a finding of minimum contacts is justified. *Burger King Corp.,* 471 U.S. at 478–79, 105 S.Ct. 2174. In the present matter, Defendant was the parent corporation of an Alabama corporation which was the subject matter of the contract. (Moeller Aff. at 3–4.) As parent corporation, Defendant exercised considerable control over SCUS,[3] and as such, Defendant's C.E.O. Hojland and other agents regularly

---

of independence from the parent, jurisdiction over the parent may not be acquired on the basis of the local activities of the subsidiary." *Portera v. Winn Dixie of Montgomery, Inc.,* 996 F.Supp. 1418, 1422 (M.D.Ala.1998) (quoting 4 Wright & Miller, Fed.Prac. & Proc., Civil, 2d § 1069). As such, Plaintiffs would have to demonstrate that SCUS's existence was "formal only and without any semblance of individual identity," and that SCUS was merely an agent of Superfos. *Id.* The evidence proffered before the court indicates that Defendant exercised a significant level of control over the financial affairs of SCUS. (Owens Aff. at 79–86, 95–106, 111–32.) Because this connection with the forum state was related to the contract between the parties, though,

there is no need for the court to examine whether it rises to the level of "systematic and continuous."

3. For instance, during Owens' tenure many of his decisions were subject to the approval of Defendant and Defendant's C.E.O. rather than the SCUS Board of Directors which rarely, if ever, met. (Owens Aff. at 118, 130–31.) Indeed the SCUS Board had no input regarding even its own sale-virtually all of its substantive decisions were made by Defendant. (*Id.* at 119–127; Palmer Aff. at 23–24.) SCUS was undercapitalized and its financial viability depended upon loans from Defendant and its larger expenditures needed Defendant's approval. (Palmer Aff. at 25–42.)

contacted Plaintiffs. (Owens Aff. at 81–85; Owens Supp.Aff. at 2.) Communications between Hojland and Plaintiffs increased in frequency in the summer of 1999 when outside parties began to express interest in purchasing SCUS. (Owens Aff. at 134–46, 193.) It is through these communications that the Success Fee Agreements materialized. (*Id.* at 147–55, 165–67, 182–86.) The present litigation, then, bears significant relation to Defendant's contacts in Alabama, and, indeed, arose out of them.

These facts also support a finding that Defendant has purposefully availed itself of the benefits and protections of Alabama law such that it is "not unreasonable to require [it] to submit to the burdens of litigation" here. *Burger King Corp.*, 471 U.S. at 476, 105 S.Ct. 2174. Not only has Defendant "deliberately ... engaged in significant activities within" Alabama, but it has also "created continuing obligations between" itself and Alabama citizens. *Id.* (internal quotations removed). It was the direct parent of SCUS from 1996 to 1999, all the time maintaining contact with Plaintiffs. (Palmer Aff. at 17–18; Owens Supp. Aff. at 2). Nothing in the record suggests that this relationship would not have continued had the corporation never changed hands. In short, there is nothing "random" or "fortuitous" about Defendant's contacts with Alabama. *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174.

Furthermore, a "direct solicitation by a foreign defendant of the business of a forum resident has been held to be 'purposeful availment' in cases where ... *some* in-forum performance on the part of the plaintiff was contemplated." *Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A.*, 792 F.2d 989, 994 (11th Cir.1986) (emphasis added). It is difficult to imagine that the parties to this agreement did not contemplate that the president and the C.E.O. of an Alabama corporation would do at least some of the contractual work in the forum state. In light of this purposeful availment within Alabama, it can hardly be argued that Defendant could not reasonably anticipate having to defend itself in an Alabama court. Defendant should have been "fully aware that [its] actions or omissions would have a substantial effect in" Alabama. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir.1996).

The court finds that the exercise of jurisdiction is not inconsistent with fundamental notions of justice and fairness. The court considers factors such as the burdens imposed upon Defendant, the interests Alabama has in adjudicating the dispute, and Plaintiffs' interests in obtaining convenient and effective relief. *Huey v. Am. Truetzschler Corp.*, 47 F.Supp.2d 1342, 1349 (M.D.Ala.1999). Alabama has a manifest interest in protecting the rights of its citizens. Toward that end, considerations of justice counsel in favor of offering Plaintiffs a convenient forum in which to litigate.

While the court is mindful of the weight that is normally given to "the unique burdens placed upon one who must defend oneself in a foreign legal system," *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County*, 480 U.S. 102, 114, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), this factor is weakened by Defendant's significant contacts with Alabama. A defendant who "purposefully has directed his activities at" Alabama residents "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477, 105 S.Ct. 2174. Since the record indicates that Defendant's agents regularly visited Alabama, the court is not persuaded that it would be unreasonably burdensome to require one more trip to Alabama. Moreover, "in light of the rela-

tive burden that would be caused [Plaintiffs] if this case were to be litigated in [Denmark], the burdens on [Defendant] caused by adjudication in this country are by no means unfair." *Vermeulen,* 985 F.2d at 1552.

Thus, the court finds that Defendant possesses sufficient contacts with Alabama to satisfy due process requirements, and that the exercise of jurisdiction by the court would not offend traditional notions of fair play and substantial justice.

### Forum Non Conveniens

■ Defendant argues that, even if the court's exercise of jurisdiction is constitutional, the matter should nonetheless be dismissed on the grounds of forum non conveniens.[4] This doctrine authorizes a trial court to decline to exercise its jurisdiction when it appears that the convenience to the parties and the court, in addition to the interests of justice, indicate that the action should be tried in another forum. *Sibaja v. Dow Chem. Co.,* 757 F.2d 1215, 1218 (11th Cir.1985). The governing standard in federal courts is that "dismissal will ordinarily be appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

In determining the applicability of the doctrine of forum non conveniens, courts in this district have considered numerous factors, both of public importance and of private interest. Public interest factors include the local interest in the controversy, the burden on the already congested court system, the difficulties in applying foreign

law, and the imposition of jury duty on Alabama residents who have little relation to the controversy. *Tisdale v. Shell Oil Co.,* 723 F.Supp. 653, 658 (M.D.Ala.1987). The private interest factors include the accessibility of sources of proof, the cost of obtaining witnesses, and other practical problems that might add to the burdens of litigation in Alabama. *Id.*

The burden is on Defendant to prove that these factors weigh in favor of dismissal, but it must first overcome the "strong presumption" that resident Plaintiffs' choice of forum is sufficiently convenient. *Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1311 (11th Cir.2001). This burden is high-"defendants in such cases are required to prove vexation and oppressiveness that are all out of proportion to the plaintiff's convenience." *Id.* at 1314. (internal quotations omitted). Thus, a crucial fact in the present analysis is that Plaintiffs reside in Dothan, Alabama, the city in which an eventual trial would be held. (Owens Aff. at 10; Palmer Aff. at 2.) This fact indicates that there is a significant local interest in hearing the controversy. Additionally, potential jurors have a relationship to the controversy insofar as it concerns the sale of a corporation headquartered in Dothan. (Owens Aff. at 6.) Moreover, since documents and witnesses relevant to Plaintiffs' case are located in the forum city (Owens Aff. at 205–06; Palmer Aff. at 60), it is difficult to imagine that there could be a more convenient forum to hear the case.

Still Defendant insists that litigating this case in Alabama would be highly burdensome since its crucial witnesses and documents are located in Denmark. However,

---

4. The doctrine of forum non conveniens "is a rule of venue, not a rule of decision;" therefore, even though the court's jurisdiction over the subject matter is based on diversity of the parties, Alabama's rule of non conveniens is not binding under the *Erie* doctrine. *Sibaja v. Dow Chem. Co.,* 757 F.2d 1215, 1219 (11th Cir.1985).

Defendant has offered little in the record to indicate with specificity who or what these sources of proof might be, nor the relative difficulty in bringing them to Alabama for a trial. Such blanket assertions, without more, are insufficient to merit a conclusion that litigation in Alabama would be in any sense "oppressive." This is especially true given the evidence in the record that Defendant's agents regularly traveled to Alabama for business purposes. (Owens Aff. at 81–85). Consequently, the private factors weigh against dismissing the present matter.

The Eleventh Circuit has held that these private factors are "generally considered more important than the public factors" in a forum non conveniens analysis. *Leon*, 251 F.3d at 1311 (quoting 17 Moore's Federal Practice § 111.74[3][b] ). Nonetheless, the approach in recent cases has been to consider both factors. *Id.* The court will not deny that it has a congested civil docket, but this fact alone does not give it the discretion to dismiss a case filed by Alabama residents concerning a matter within the forum. Furthermore, the contracts are written in English, and evidence suggests that Defendant's agents who are likely to be called in this matter speak English. (Owens Aff. at 201, 204.) Thus, there appears to be no significant language barrier which might burden the court in a subsequent trial. *Cf. Tisdale*, 723 F.Supp. at 658–59 (fact that contract was written in Arabic weighed in favor of dismissal).

 There is contention between the parties, however, as to the applicable law. This factor is not insignificant insofar as "the need to apply foreign law points to dismissal." *Id.* at 658. Under the *Erie* doctrine, a court sitting in diversity will apply the conflict of law rules of the forum state. *Brown Mach. Works v. Ins. Co. of*

N. Am., 951 F.Supp. 988, 992 (M.D.Ala. 1996). In breach of contract actions, Alabama applies the law of the state in which the contract was executed. *Id.* The parties disagree, however, as to where the Success Fee Agreements were executed.

The parties agree that the formal written agreements were drafted in Defendant's headquarters in Denmark and physically handed to Owens while he was meeting with Defendant C.E.O. Hojland. (Moeller Aff. at 4; Owens Aff. at 182.) As such, Defendant insists ipso facto that Danish law applies to the contracts. Plaintiffs assert that because Owens did not open the envelope containing his agreement until the last leg of his return flight to Dothan (Owens Aff. at 183), the contract was not officially executed in Denmark. Rather, they allege, the contract was not executed until Plaintiffs reviewed the agreements and called Hojland to accept the contract. (*Id.* at 184–86.) This acceptance, being the last act in the contracts' execution, demands an application of Alabama law according to Plaintiffs.

To complicate matters further, the record raises an inference that the written contracts were little more than a memorializing of an ongoing agreement. Even before Owens' trip to Denmark, the parties had already discussed the terms of the agreement and Plaintiffs had already begun work in that regard. (*Id.* at 148–77.) The fact that the majority of this work was done in Dothan (*Id.* at 177) beckons an application of the place-of-performance rule. *First Nat. Life Ins. Co. v. Fidelity & Deposit Co. of Md.*, 525 F.2d 966, 967–68 (5th Cir.1976) (applying law of state in which contractual performance was due to occur).[5] In fact, the long standing rule in

---

5. Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit.

Alabama is that "the nature, obligation, validity and interpretation of a contract are according to the laws of the state where made, or *where performance begins,* ... unless it is to be performed in some other place, in which case the law of the other place and of performance will govern." *J.R. Watkins v. Hill,* 214 Ala. 507, 108 So. 244, 245 (1926) (emphasis added).

This rule is relevant to the present matter in two fundamental respects. First of all, even if the court were to conclude that the contracts were executed in Denmark, the fact that the work was meant to be performed in Alabama calls for the application of Alabama law. Defendant points out that some of Plaintiffs' work was done in New York, however, and, in fact, could have been performed anywhere. (Moeller Aff. at 6.) Alabama law is unclear as to contracts that are intended to be performed elsewhere, but, in fact, are not performed in any one particular forum. The court need not seek to resolve this issue, however, because, wherever the contract was executed, it is clear that performance began in Alabama. This is especially so for Palmer, who did not accept the contract in any regard in Denmark.

Since Alabama law applies to the contracts in question, the court cannot conclude that it is an improper forum to hear the matter. The private and public interest factors weigh in favor of this court exercising its jurisdiction. As such, the court must deny Defendant's motion to dismiss on grounds of forum non conveniens.

### III. ORDER

It is CONSIDERED and ORDERED that Defendant Superfos A/S's Motion To Dismiss be and the same is hereby DENIED and that Defendant's objections to

Plaintiffs' affidavits be and the same are hereby OVERRULED.

*Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).